UNION PACIFIC RAILWAY CO. v. EDWIN W. HAND.

1. COURT—*Commencement and close of Term.* A court legally opened for all general purposes continues in session until it adjourns *sine die*, or expires by law, and when an adjournment is made from Saturday till Monday, and from unavoidable cause does not convene until Wednesday, the term not having then expired by law, the court is legally constituted, and its acts are valid and binding.

2. EVIDENCE—*Remote; Competency.* Testimony though somewhat remote is still legitimate if it tends to maintain the issues in the case.

3. RAILWAY TRACK—*Defect—Allegation and proof.* Where the petition alleges the cause of plaintiff's injury to arise from a defective track, a defect in the track anywhere may be shown, if it contributed to the injury.

4. CARE AND SKILL; *Diligence required.* Railroad companies are required to use the utmost human sagacity and foresight in the construction of roads, to prevent accidents to passengers.

5. DAMAGES; *Excessive; New Trial.* Where the amount of damages assessed in a verdict shows that the jury was influenced by passion and prejudice, it is the duty of the court to order a new trial of the case.

*Error from Douglas District Court.*

ON the 10th of April, 1867, *Edwin W. Hand* paid his fare and took passage in the cars of the *Union Pacific Railway Company*, at Junction City, for the purpose of going to Manhattan. When near Fort Riley several cars of the train ran off the track, the passenger coach, in which was *Hand*, upset, and Hand was injured. In August, 1867, he brought suit in the district court of Douglas county, to recover damages for the injuries he had sustained, claiming $10,000. In his petition the plaintiff alleged that the track of defendant's road between Junction City and Fort Riley "was at that time defective, unsound, and unfit to be used for that pur-

pose," and alleging *scienter* and negligence on the part of the company. The defendants answered, interposing a general denial. The case was tried before a jury at the December Term, 1868, when a verdict was returned in favor of the plaintiff, assessing his damages at $5,000. The record is very voluminous. Exceptions were taken by the defendant to the competency and relevancy of testimony, to the refusal to give certain instructions, to the modification of other instructions, and to the overruling of a motion for new trial, which was asked on the ground that the damages were excessive, and were the result of passion and prejudice on the part of the jury. Upon all these points the facts are stated in the opinion of the court. Judgment being entered on the verdict in favor of the plaintiff, the defendant brings the case here by petition in error.

In this court a question of jurisdiction is raised, involving a determination of the question whether, upon an adjournment of the court from day to day, a failure upon the part of the district judge to attend at the time appointed, and for several days thereafter, operates as an adjournment *sine die*. The facts upon which this question is raised are fully stated in the opinion.

*John P. Usher*, for plaintiff in error:

1. The issue in this case is formed upon the averment in the petition that the road was defective within the reasonable knowledge of the defendant, and that *by reason of that defect* the car in which the plaintiff was riding *was thrown from the track* and plaintiff injured.

To prove that the road was defective at the time and place, the plaintiff offered and the court admitted testimony that it was in bad condition in the preceding month of March, and that one or more accidents had occurred

in March to trains near the place in question. This was error. There was no evidence that other trains ran off the track from any *defect* in the road. The time of the running off of the train in March was too remote to raise a presumption of neglect in April. *Moss v. Johnson*, 22 Ill., 633; 1 McLean, 440; Ang. on Carriers, § 592. The plaintiff can recover only for injury alleged, and as alleged.

2. The court erred in the refusal of the defendant's instructions to the jury. The defendant had the right to the instructions as asked, or to be positively refused. They were refused, but given with a modification whereby they became the instructions of the court.

The company has discharged its duty to the passenger when it is shown that the track is in perfect condition for the running of the cars on the rail, and it is in the performance of that duty that the utmost skill, human sagacity and care is required; and the company is not chargeable with neglect of duty in omitting, all along the line of its road, to provide all the imaginary safeguards to preserve its passengers from injury after the cars are thrown from the track.

It is with respect to the *well known* means employed by the carrier that the utmost skill, etc., is required. Yarwood's case, 15 Ill., 468; Fay's case, 16 Ill., 566; Deyo's case, 34 N. Y., 9.

3. The damages were excessive, and the court erred in not granting a new trial. The court, in overruling the motion for a new trial, declared, and made it a matter of record, that the damages assessed beyond $2,000 were excessive. The judge formed the opinion that the damages were excessive from the evidence in the whole case, and an inspection of the plaintiff present, and a witness for himself.

The plaintiff had been injured, it is true, but the only permanent injury was in the knuckle to the fourth finger of the right hand—that was slightly displaced. If he had been killed outright by the negligence of the defendant, the utmost that could have been recovered was $10,000 ; and to say that he should have $5,000 for the displacement of a knuckle, justified and required the court to declare that it was excessive by all over $2,000.

4. It should be noted that the petition in this' case is defective, and upon which judgment for the plaintiff was not lawfully given. The defect consists in the absence of any allegation that the injury was occasioned without the fault of the plaintiff. This allegation is as essential and necessary as it is to allege the negligence of the defendant. *Jeff. R. R. Co. v. Hendricks*, 26 Ind., 228; 34 N. Y., 9; 26 Ill., 373.

*E. L. Aiken*, and *Thacher & Banks*, for defendant in error:

1. There is no motion for a new trial made in this case. The judgment was entered in the case December 5th, 1868. The record shows that the court adjourned on that day to Monday morning, December 7th; that neither on that day, the 7th, nor on the 8th, was there any court held, the judge being absent.

In *People v. Bradwell*, 4 Cowen, 445, it was held that where a court of oyer and terminer was to be held on Monday, but did not convene until Wednesday, all proceedings had on and after Wednesday were *coram non judice*. The court held there is no implied power of adjournment. In the case at bar the court had the entire day of the 7th to convene, but not after that. *People v. Lancher*, 24 Cal., 17. The court ceased to exist on the evening of the 7th; there being no power to adjourn the same by the sheriff.

Section 719 of the civil code applies only to the absence of the judge at the commencement of the term; in such case the sheriff may adjourn the court. There is no power of enlargement in the court. (Sedg. Stat. Law, 322.)

All proceedings after the 5th of December are, therefore void, since none of them were commenced or instituted until on or after the 8th of December.

2. It is said that the petition does not state facts to constitute a cause of action, inasmuch as it does not state that the accident occurred to the plaintiff without his fault. Such averment was not essential. The leading work on railways holds in just so many words, that such an allegation is not necessary. 2 Redf. on Rail., 668; *Smith v. Eastern R. Co.*, 35 N. H., 356; *Richards v. Westcott*, 2 Bosw., 589.

Redfield lays it down generally that, where the record shows the case to have been tried on its merits, a defective statement of facts, or an *omission* to state them, will not arrest the judgment.

3. The testimony respecting the defective track was admissible, both as to place and time. Other accidents had occurred at and near the same place, and within a few days of the time when plaintiff was injured. Many cases go to the point that the proving of the injury and accident throws the onus on the railroad company to show due care. 2 Redf. on Rail., 176, and cases cited; 2 Pars. on Cont., 295; 1 McLean, 540. And " things once proven to have existed in a particular state, are to be understood as continuing in that state until the contrary is proved by evidence." Burrill on Circumstantial Ev., 21.

4. There was no error in the instructions as given. It was the duty of the court to modify those asked by defendant, that the jury might not be misled.

The proposition that the company is bound to use the utmost human sagacity and foresight with respect to its road, is fully sustained by all the authorities.  *Brown v. N. Y. Cent. R. Co.*, 34 N. Y., 404, 411; Story on Bail., § 601.

The company must show human prudence could not have prevented accident, when presumption of negligence has once been raised. 2 Redf. on Rail., 200; *McKinney v. Neil*, 1 McLean, 550; *Peck v. Neil*, 3 McLean, 24; 2 Pars. on Cont., 224, 228, and notes; *P. & R. R. R. Co. v. Derby*, 14 How. U. S., 468.

5. The damages were not excessive.  The time alone of the plaintiff was worth at least $1,800; his board and doctor's bills would carry the figures to $2,000.  That the jury, in estimating damages in these actions for injuries to the person, are not only to take into consideration the loss of time, the attendant expenses, but also are to estimate the physical pain, suffering, liability to a shortened life from the injury, and all disability flowing from the alleged trespass, is undisputed law.  *Moore v. Auburn R. Co.*, 10 Barb., 621; 2 Redfield, 222; *Rawson v. N. Y. & E. R.*, 15 N. Y., 415.  The plaintiff below was disabled in his hand for life, he was badly bruised, and suffered great pain; and for all this the jury gave him $3,000 above his actual loss.

In general the amount of damages does not furnish evidence of passion or prejudice on the part of the jury. *Cole v. Perry*, 8 Cowen, 214; *Ryckman v. Paching*, 9 Wend., 469.

If there is no proof that the jury were actuated by wrong motives other than that arising from the verdict, and other reasons may be supposed to influence the verdict, the court will not impute an improper motive.  3 Gra. & Wat. New Tr., 1135, 1174.

25

There must be affirmative evidence, showing passion or prejudice on the part of the jury. Hill. Rem. for Torts, 524; *Trainor v. Donohoe*, 9 Cush., 228; *Wells v. Sawyer*, 21 Mo., 354; *Payne v. The Pacific, &c.*, 1 Cal., 33.

The opinion of the court was delivered by

KINGMAN, C. J.: A question is raised *in limine*, of controlling importance. The facts necessary to understand it are these: The verdict in the case was returned and judgment entered thereon on Saturday the 5th of December, and at the close of the day the court adjourned to Monday, the 7th; but neither on Monday, the 7th, nor on Tuesday, the 8th, was any court held, the district judge being absent. On the 8th of December the motion for a new trial was filed with the clerk. On the 9th, the judge having reached Lawrence, the court was opened, and the motion for a new trial was heard and overruled, and time given to make a case; and that case so made raises all the questions but one made in this court. It is insisted by defendant in error that all the proceedings had on Wednesday the 9th were *coram non judice*, and present no basis on which this court can act. The record shows that on Monday, the 7th, and on Tuesday, the 8th, the court was adjourned by the sheriff, the order reciting the absence of the judge, being detained by a severe storm. Section 719 of the civil code is referred to as sustaining the correctness of the action of the sheriff. This section seems clearly to refer to the beginning of a term, and therefore is not applicable to this case. It was inserted for the sole purpose of saving the term if the judge was detained from the place for any cause: *Thomas v. Fogarty*, 19 Cal., 644; *People v. Sanchez*, 24 Cal., 17. By the common law

*I. Court; when term begins, and when closes.*

a failure to open the court on the first day of the term wrought a loss of the whole term: *People v. Bradwell*, 2 Cow., 445. The great inconvenience arising from this principle early led to its correction by legislation. Accordingly the English Parliament in the 3 Geo. IV, 18, made provision that the court might be opened at some day subsequent to the first day of the term, and that all records and proceedings should be made up as of the first day of the term; 2 Bac. Ab., title *Courts*, p. 714; and our examination has shown that similar laws have been passed in many of the States. This section of our code having only reference to the beginning of the term, the act of the sheriff in adjourning the court, was simply a nullity. Yet we do not think that the term was lost by the adjournment of the court on Saturday till Monday, and its not convening till Wednesday. The term of the court is fixed by law. Having once opened, it so continues till the term expires, or an adjournment *sine die* is made. The adjournment from day to day does not suspend its functions. After the court has adjourned for the day, it is a common practice for grand juries to continue their sessions, swear witnesses, pursue their investigations, and find bills; and petit juries frequently remain out all night in deliberation, and make up their verdicts, while the journal shows that the court has adjourned. Each of these juries is part of the court, performing important functions; and the court is always in session in fact, so that it can protect the juries, and enforce proper conduct on their part. "For all general purposes the court is considered as in session from the commencement till the close of its term." *Barrett v. The State*, 1 Wis., 175. In the case just cited, the court had adjourned till the next day, and some hours after the adjournment, and before the next day had begun, received a verdict in a

criminal case, which was held good, on grounds that necessarily cover the case under consideration. At common law the whole period of a term was looked upon as a single day, and everything done at the term was regarded as done of that day. We need not point out what innovations our statutes have made on this doctrine, but we nowhere find it entirely abrogated. The statute still makes judgment liens revert to the first day of the term at which the judgment is rendered. There is an evident purpose on the part of courts to so construe the law, if possible, as will uphold the sessions of courts actually doing business. See *Womack v. Womack,* 17 Texas, 1; *Cook v. Skelton,* 20 Ill., 107; *Jones v. State,* 11 Ind., 357. In this case we find there present the judge, the clerk, and other ministerial officers at a time and place where it is by law authorized to be held, properly organized at the beginning of the term, and performing the functions of a court. This must be held to be a court legally constituted, and fully authorized to transact business. 2 Bac. Ab., 6, 16, title *Courts.* This conclusion makes it necessary to examine the various questions raised in the record.

, I. The first of these is, that the petition is defective in this, that it does not state that the injury was occa-

*Pleading; sufficiency; effect of verdict.* sioned without the fault of plaintiff. As the plaintiff does not have to prove this fact, it is not clear upon what ground it ought to be stated in the petition. If his negligence appears in the case as contributing to the injury, then he cannot recover; but this is matter of defense. We do not now decide the point. It was not made in the district court. The petition on any ruling states facts sufficient to uphold the verdict, and even if the omission was a defect, it could not be taken advantage of after verdict and in this court for the first time.

II. The next objection is to the admission of testimony. The petition states that the road was defective,

2. Evidence; remote; competent.

and by reason of the bad condition thereof the cars were thrown from the track and plaintiff injured. To support this allegation, testimony was introduced tending to show that the accident took place on the 10th of April, and that the road was in bad condition previous to that time, even in March, and that one or more accidents to trains had occurred at or near the same place in March. It is claimed that showing the road to be bad in March does not show it was so on the 10th of April. There was much conflicting testimony as to the condition of the road, and it was not improper to permit the plaintiff, who was a stranger, to show the condition of the road two or three weeks previous to the accident. It may have been somewhat remote, but really went to show the condition of the road at one time, and by other testimony tending to show that it remained in the same condition up to near the time of the accident was proper to go to the jury. If a plaintiff was confined to the precise moment of an accident to prove the condition of the road he would in almost every case be helpless; he must be allowed some latitude, and in this case it did not go too far. The same remarks apply to the testimony as to the accidents occurring in March to other trains. It is true, as claimed by plaintiff in error, that they might have occurred from defective cars, or from bad management in the running of the trains; but at any rate they were facts, and connected as they were with this accident by being at and near the same points on the road were properly submitted to the jury. If they did not show the road to be in bad condition they tended strongly that way.

III. The plaintiff in error complains of the instructions

of the court. We have examined them with great care, and will state our conclusions briefly. The

*3. Defective railroad track; allegation and proof.* issue is formed upon the averment that the track of the road of defendant was defective, and by reason of that defect the car in which plaintiff was riding as a passenger was thrown from the track, and the plaintiff injured. The jury were correctly instructed that the burden of proof was on the plaintiff to show the defect as alleged. The defendant below asked eleven instructions, four of which were given as asked. The others were given with a modification by the court, which was duly excepted to. The purport of these several instructions was, that if the road was good, or was perfect, or if the preponderance of the testimony showed the road to be good, or if it was to all appearance perfect, or if immediately before and after the accident the road was perfect at the time and place where the cars went off the track, then the plaintiff could not recover. Each of these instructions was really intended to accomplish but one purpose, and that was to confine the attention of the jury to the condition of the track at the *precise place* where the cars went off the track, and to each of them the court added this modification : " But if any part of the track from the place where the cars run off the track to the place where they turned over was not in good order and good condition, and caused or contributed to the injury of the plaintiff, the goodness of the track at the place where the cars run off will not excuse the defendant." The peculiar bearing of the instructions, and the importance of the modifications becomes apparent, when it is stated that the evidence shows that the train to which the accident occurred was running east; that it was a freight train, with a passenger car attached; that about seventy or eighty feet west of a bridge the passenger car

and two or three freight cars run off the rails, and continued to run along side the rails across the bridge, which was one hundred feet in length, and until the train was stopped, some seventy or eighty feet east of the bridge, when the passenger car tipped over, and the plaintiff received the injuries complained of. Now it appears from the testimony in behalf of the railroad company, that the train was running at the rate of six or seven miles an hour on a three-degree curve; that at the place where the car went off the rail, the track was in perfect order, and the rails were in perfect line after the accident occurred. According to the testimony of Smead, an engineer who examined the track immediately after the accident, it was unaccountable; that between the place where the cars ran off and where the passenger car tipped over, the track was thrown out of line, and the ties on the bridge were displaced. There was testimony showing that a different manner of constructing the bridge was, in the opinion of some engineers, safer than the one adopted in building the bridge where the accident occurred. It becomes important in deciding the propriety of the modification made by the court to the instructions asked by defendant below to bear in mind that the claim of plaintiff below rested on the allegation that the accident occurred by reason of a defective track. Whether the defect existed in the track at a place still further west than where the cars went off the track, or at the place, or at the bridge, or east of the bridge, it could make no difference, if the defect caused or contributed to the injury of plaintiff. If the plaintiff established the fact, it was all he had undertaken to do in his pleading, and all the law required him to do; and to this extent only the modification of the instructions went, and was properly made.

IV. At the request of plaintiff below, the court instructed the jury that, "if the defendant could have pre-

4. Care and skill; vented the accident by the utmost human
degree of dili-
gence required. sagacity or foresight, with respect to their track, then the defendant is liable." This is established law. The defendant sought to have it explained to the jury by requesting the court to tell them "that the utmost human sagacity required of the defendant did not require of the defendant to take such extraordinary measure in constructing, operating, and maintaining its railroa . us are not and have not been in use in the constructing, operating, or maintaining of railroads." This the court refused to give, and its refusal is assigned as error, and we are asked to correct it. We know of no reason peculiar to this State why human life and safety are not as valuable here as elsewhere; at any rate, it is not the province of courts to cheapen it, by construing away established principles, laid down to make life secure.

Fault is found with other instructions, but hardly such as requires attention. We are convinced that the questions at issue were properly submitted to the jury, under instructions such as the law requires.

V. The plaintiff in error, in the motion for a new trial, set up as one of the grounds therefor that the dam-

5. Damages; ex- ages assessed were excessive, and given under
cessive; new
trial. the influence of passion and prejudice. In overruling the motion for a new trial the court found that the assessment of the jury beyond the sum of two thousand dollars was excessive, but found nothing in the evidence or otherwise, save the amount of the verdict, to show passion or prejudice on the part of the jury; but inasmuch as the case was to be taken up on error on other grounds, which it was desirable to have settled, overruled the motion for a new trial.

An examination of the evidence has convinced us that
the damages awarded are so excessive as to show plainly
that the verdict was given under the influence of passion
or prejudice, and ought to be submitted to the judgment
of another jury.   The only permanent injury the plain-
tiff received to his person, was in the "fourth metacar-
popholangeal articulation of the right-hand," which, be-
ing translated, means that there was an injury to the lig-
aments of the third finger of the right hand, causing a
slight deformity, and some loss of power in the hand.
Besides some bruises elsewhere, he had received an injury
to his lung, which caused some uneasiness and renders
him more liable by exposure to attacks of a pulmonary
character.  This injury was nearly overcome on the 1st
of May, 1867, according to the testimony of his own
physician.   There was some loss of time, but not great,
for it appears that he was moving about in Kansas till
he went to Chicago about the 20th of April, and on the
8th of May it appears from one of his own witnesses he
was traveling from Chicago to St. Paul.   His business
was selling lamps on commission, at which he was mak-
ing $25 per day, according to his own testimony.   Take
the testimony altogether, of which we have given but a
few points most favorable to the plaintiff, below, and we
are constrained to send the case back for a new trial.  Of
course, courts are reluctant to interfere with the verdicts
of juries on the ground of excessive damages; but to
uphold them where a great wrong has been done, would,
as a precedent, be doing an infinite wrong to the commu-
nity.   The rights of parties are submitted to the unbi-
ased judgment of juries, not to their passions or preju-
dices, and where it is apparent that these feelings have
entered into and influenced their decision, it becomes the
duty of the court to see that a tribunal organized to se-

cure justice is not perverted from its proper purpose to become the instrument of oppression and injustice.

The judgment is reversed and a new trial awarded on this ground alone.

BREWER, J., concurring.

VALENTINE, J., not sitting.