THE SOUTHERN KANSAS RAILWAY COMPANY v. L. C. WALSH.

1. INJURIES TO PASSENGERS—*Burden of Proof.* Where a passenger brings an action to recover for injuries resulting from the derailment of the train on which he was riding, and therein shows the occurrence of the accident and the extent of his injuries, a *prima facie* case is made out in his favor, and the burden is thrown upon the railway company to show that the injury did not result from a want of care upon its part.

2. ——— *Defense; Inevitable Accident.* The *prima facie* case thus made out may be overthrown by showing that the injury resulted from inevitable accident, or something against which no human prudence or foresight on the part of the company could provide.

3. ——— *Degree of Care.* The railway company owes a higher duty to its passengers than mere ordinary care and foresight in the con-

struction and maintenance of its tracks; it is bound to exercise the highest degree of practicable care; not the utmost possible precaution that might be imagined; but the highest care and best precaution known to practical use, and which are consistent with the mode of transportation adopted.

4. FINDINGS — *How General — How Particular.* The question of how general or how particular the question of fact to be submitted to the jury in any particular case should be, rests largely in the sound judicial discretion of the trial court.

5. ———— *Improper Evidence — No Reversal, When.* The admission of improper evidence is not a ground of reversal, where the special findings show the testimony elicited to have been immaterial.

6. EXCESSIVE DAMAGES — *Verdict, Not Disturbed.* The testimony examined, and *held* to be sufficient to sustain the findings of the jury, that the injury resulted from the negligence of the railway company; and the testimony in relation to the character of the injury is found to be of such a character that the allowance of $5,246 as damages is not so excessive as to warrant the court in interfering with the verdict.

*Error from Montgomery District Court.*

THE opinion states the material facts.    Judgment for plaintiff *Walsh*, on January 21, 1888.    The defendant *Railway Company* brings the case to this court.

*Geo. R. Peck, A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*J. D. McCue,* and *Wm. Dunkin,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to recover for injuries received by L. C. Walsh while a passenger on one of the trains of the Southern Kansas Railway Company *en route* from Moline to Independence.    The train was derailed between the points mentioned, and he alleged in his petition that the track of the railroad between the points named was out of repair and dangerous for travel; that the company willfully and wantonly permitted the rails to become battered and worn, the cross-ties rotten and unfit for use, and negligently failed to use a proper quantity and quality of ballast on the track; and that on February 14, 1887, when the de-

railment occurred, the road was utterly unsafe and unfit for use. He avers that, as a result of this condition, the train was thrown from the track when running at a high rate of speed, and he was injured as follows:

"Severe wound on left side of the head, laying open the scalp for two inches in length, cutting through to the bone; also severe contused injury of left shoulder, and to the entire scapular region of the left shoulder, tearing the *scapula* from its muscular attachments, and tilting it forward; and also causing a separation of the first, second and third ribs from their sternal attachment; also causing a separation of the clavicle from its sternal attachment, throwing it forward and upward, permanently dislocating the said clavicle; also a severe contusion of the left lung, causing spitting and coughing of blood; also bruises in face and over various parts of the body."

A verdict was rendered in favor of Walsh, in which the jury assessed his damages at $5,246.

It is first insisted that the evidence was insufficient to sustain the verdict rendered, or to show any liability whatever on the part of the company. It appears that on February 14, 1887, Walsh purchased a ticket at Moline for a passage from that point over the Southern Kansas Railway to Independence, paying therefor the sum of $1.10. The train was behind time, and when it arrived at Moline he entered one of the coaches, seated himself, and proceeded on his journey until they reached a point about two miles east of Longton, where the train was derailed. Some of the coaches were overturned down an embankment and Walsh was severely injured. There is testimony tending to show that the track was in bad condition where the accident occurred; that the ties were unsound and not properly ballasted. It is shown and conceded that the immediate cause of the derailment was the breaking of a rail. It had been put in the track only two days before to replace one which had also been broken at the same place. The company contends that an examination of the broken place disclosed no flaws or defects which could have been detected by the exercise of the utmost caution and foresight, and

that therefore the accident was fortuitous and unavoidable, for which it should not and could not be held liable. On the other side it is contended, that although there were no apparent flaws or cracks in the rail, that it was broken because it was not sufficiently supported by ties and ballast. Upon this question there is a sharp conflict in the testimony. The section-men who put in the rail two days before the occurrence of the wreck testified that the rail was placed on a solid bearing; that ties were placed under the end of the rail which broke off, and that soil and ballast were tamped about the ties so as to make the track solid and secure. On the other hand, there is positive testimony offered by Walsh that the rail which broke extended about two feet over a cattle-guard, the frame work of which was solid, and that the end which projected beyond the cattle-guard was spiked to ties, but that the ties were drawn or lifted from the ground at one end about six inches, and that the soil and ballast were not filled in and tamped under and about them. If the track was in this condition, it was dangerous and unfit for use, and this defect would fairly account for the breaking of the rail, and the wreck of the train. In view of this testimony, and the finding of the jury that the section-men did not fill the space between the tie and the ground, but left the end of the rail with the ties attached suspended several inches from the ground, and that the ties at the place of the accident were unsound, we cannot say that the verdict is without support.

The company is not an insurer of its passengers nor liable for injuries resulting from unavoidable accident in the operation of passenger trains; but there is testimony tending to show a great lack of care in providing a safe road-bed and track, and "if the defendant could have prevented the accident by the utmost human sagacity or foresight with respect to their track, then the defendant is liable." (*Railroad Co. v. Hand,* 7 Kas. 392.)

It is also contended that there was error in permitting testimony to be offered by Walsh in regard to the condition of the track at other points than where the wreck occurred. Of

course, testimony of defects which did not cause the derailment nor contribuute to the injury was not admissible.   An examination of the record indicates that the purpose of the court was to confine the testimony to the condition of the track in the immediate vicinity of the place and near to the time where and when the train was derailed.   The inquiry as to the condition of the company's track was considerably extended by both parties, and in many cases without objection, for the purpose of determining the real cause of the wreck; but as the trial proceeded, it soon became evident to all that the breaking of the rail caused the derailment of the cars, and the findings of the jury showed that they attributed the accident to this cause; and, looking at the testimony and findings together, we see nothing substantial in any of the objections to the admission of evidence.

5. Improper evidence—no reversal, when.

Complaint is also made that the court erred in refusing to submit three special questions which were asked.   No error was committed in this respect.   A long list of particular questions was submitted and answered, and, so far as any facts inquired about in those refused were proper and material, they were covered by the questions that were submitted and answered.   The principal question refused was: "Could any reasonable and ordinary foresight have anticipated the breaking of the iron rail after it had been left in the track by the workmen?"   In the first place, the question is somewhat general, while only particular questions of fact are required to be submitted; and the question of how general or how particular the question of fact to be submitted to a jury in any particular case should be, rests very largely in the sound judicial discretion of the trial court. (*Foster v. Turner*, 31 Kas. 62.)   Then, again, as we have seen, the company owes a higher duty to its passengers than mere ordinary care and foresight in the construction and maintenance of its tracks.   It must use the most exact diligence, and is answerable for any negligence, however slight.   It is bound to exercise the highest degree of practicable care; not the utmost possible precaution that might be

4. Findings—how general—how particular.

3. Degree of care.

42 — 45 KAS.

imagined, but the highest care and best precaution known to practical use, and which are consistent with the mode of transportation adopted. (*Railroad Co. v. Hand*, supra; 2 Wood's Rly. Law, 1088.)

There is also complaint that the court erred in the instructions given to the jury. The charge was very elaborate, calling attention to some of the evidence, and it is claimed that in doing so the court indicated its opinion of the facts, and improperly influenced the jury. A reading of the entire charge satisfies us that the court expressed no opinion on the facts, and that the company was not prejudiced by the course taken. The trial judge simply called attention in a general way to the theories advanced by the respective parties, and the testimony offered in support of their theories, without indicating his view on any disputed point in the testimony. Besides, he repeatedly stated to the jury that he did not intend to express any opinion on the facts, and told them that they were the exclusive judges of the facts established by the evidence in the case, the credibility of the witnesses, and the weight to be given to the testimony of each.

Special objection is taken to an instruction, a portion of which reads as follows: "I may likewise say to you there is still another rule applicable to this case: That if you find from the evidence in this case that the plaintiff in this action was free from fault and was injured, then the law presumes negligence on the part of the defendant." It is contended that this instruction was erroneous and misleading, and permitted the jury to find the company guilty of negligence and liable therefor, on the mere evidence that the plaintiff was injured. It is conceded that if the court had added to this instruction, that if the jury found that Walsh was a passenger on the train of the company, and was injured on account of a defect in the track or some of the appliances of the road or its machinery, then the presumption of negligence would arise; but as injuries frequently happen without any fault or misconduct on the part of the company or its employés, that therefore the instruction was erroneous and prejudicial. The

instruction complained of is not to be taken by itself and without reference to the other portions of the charge in which it is found. The court expressly stated to the jury that the burden rested on the plaintiff to show that the injury resulted from the negligence of the company, and that negligence could not be presumed. The part of the charge criticised referred to the presumption which arises where a collision between railway trains occurs, or where a train is derailed and passengers thereon are injured. It is well set-

*1. Injuries to passengers— burden of proof.* tled by the authorities, that in such cases a *prima facie* presumption of negligence on the part of the railroad company arises, which throws the *onus* upon the company of disproving a want of care on its part. Proof of the occurrence of the accident and the extent of the passenger's injury makes a *prima facie* case in his fa-

*2. Defense; inevitable accident.* vor; but this may be overthrown by showing that the injury resulted from inevitable accident, or something against which no human prudence or foresight on the part of the company could provide. (*Breen v. Railroad Co.*, 109 N. Y. 297; *Railway Co. v. Napheys*, 90 Pa. St. 133; *Stokes v. Saltonstall*, 13 Pet. 190; *Railroad Co. v. Pollard*, 22 Wall. 341; *Smith v. Railroad Co.*, 32 Minn. 1; *Railroad Co. v. Anderson*, 6 Am. & Eng. Rld. Cases, 407; *Hipsley v. Railroad Co.*, 27 id. 287; *Railroad Co. v. Walrath*, 38 Ohio St. 461; *Bowen v. Railroad Co.*, 18 N. Y. 408; *Feital v. Railway Co.*, 109 Mass. 398; *Railway Co. v. Findley*, 76 Ga. 311; 2 Wood's Rly. Law, 1096; Patterson, Rly. Acc. Law, 438, and cases cited.)

The instruction complained of should have required a finding by the jury that the injury resulted from the derailment; but this fact was not disputed, and as the derailment is conceded to have been caused by a broken rail in the track of the company, the omission is unimportant. In other portions of the charge, the jury are advised that if the derailment was an inevitable accident, and not the fault of the company, the law will hold it blameless and free from liability. The degree of care required of the company and of Walsh, and

the rules of law applicable to the case under the evidence that was given, were fairly stated, and we find nothing in the charge which requires a reversal.

One other objection remains, and that is, that the damages awarded are excessive. Only compensatory damages were allowed, and the amount of the allowance — $5,246 — was itemized by the jury as follows:

"For suffering in the past, $1,000; for suffering in the future, $1,000; for inability to perform physical labor, $3,000; for physician's bills, $150; for board and lodging, $42; for loss of time, 18 days at $3 per day, $54."

While it appears to us that the amount awarded is liberal, we cannot say that the jury acted corruptly, or under the influence of passion, partiality, or prejudice. At the time of the accident, Walsh was 31 years of age, in excellent health, and held the position of United States pension examiner, the compensation of which was about $2,500 per year. Dr. McCulley, who examined him shortly after the injury occurred, found a wound on the back of his head, two inches in length and half an inch deep; a fracture of the clavicle bone near the middle breast-bone; a complete fracture of the first, second and third ribs; the *scapula* was thrown out of its natural position, and one of the large muscles which held the *scapula* was torn from its attachment; the *pleura* which surrounds one of the lungs was ruptured; and he also found a continual coughing and an occasional coughing up of blood. On a subsequent examination, shortly before the trial, the same witness stated that he found a vesicular condition of the lungs and inability to expire air, and that it was his opinion that his ability for labor was greatly impaired, and perhaps to the extent of one-half; that the effect of his injury would be to render him liable to attacks of asthma and diseases of the lungs, and to shorten his life. Dr. Masterson, one of the surgeons of the railway company, examined Walsh shortly after his injury and discovered the same fractures and injuries that were found by Dr. McCulley. He also found that there was an emphysematous condition of the lungs, and that the upper

lobe of the left lung was injured.   There was also a cough
and bloody expectoration; that on account of a rupture of
the lung tissue the air escaped and passed through the *pleura*
of the lung into the cellular tissues.   On another examina-
tion, shortly before the trial, he found that there was a dila-
tion of the air-vessels and enlarged condition of the terminal
ends of the bronchial tubes, and that, in his opinion, Walsh
would never fully recover from the effects of the injuries.
Another physician who examined him stated that the effect
of the injury would be to weaken his lungs, shorten his life,
and occasion him pain and suffering.   Walsh testified that
he had suffered great pain from the injuries until the wounds
were healed and the bones united; that the injuries had greatly
affected his general health; that he had continuous pain in
the region of his kidneys, a bloody discharge with his urine,
a continuous cough with pain in the lungs; that his powers
of endurance were greatly lessened and his ability to perform
manual or mental labor was not more than one-half of what
it was prior to the injury.   The testimony shows that the in-
jury, which has already caused Walsh great pain and suffer-
ing, is of a permanent character; that it greatly impairs his
ability for labor, will subject him to discomfort and pain dur-
ing the future, and render him less able to resist or recover
from other diseases hereafter.   In view of the age, former

6. Excessive damages— verdict, not disturbed.

good health and earning capacity of Walsh, and
his condition as shown by the testimony referred
to, we do not feel warranted in interfering with
the verdict upon the ground that the award of damages is
excessive.

The judgment of the district court will be affirmed.

All the Justices concurring.