THE PARSONS & PACIFIC RAILROAD COMPANY v. MARGARET MONTGOMERY.

1. EMINENT DOMAIN — *Damages* — *Reduction of Verdict* — *New Trial.* When a trial court, in an action to recover damages for the condemnation of a right-of-way taken for public use, arbitrarily reduces the amount of the verdict rendered by a jury, from $3,327.08 to $2,589, and the record assigns no reason for such a reduction, and the record shows the jury adopted the highest and most extreme estimate of value, depreciation and damage in the verdict returned, such judgment will be reversed, and a new trial granted.

2. EXCESSIVE DAMAGES — *General Rule.* While there may be cases where the trial court may properly reduce the amount of a verdict on account of some particular fact, or on some element of damage, or for some error in the computation, or when the reduction is occasioned by some other sufficient reason, the judgment may be upheld; yet, the general rule is, when the damages returned by a jury are so excessive as to show the verdict was rendered under the influence of passion or prejudice, it will be set aside, and the questions in issue submitted to the judgment of another jury.

*Error from Montgomery District Court.*

THE opinion contains a sufficient statement of the facts.

*C. H. Kimball*, for plaintiff in error.

*Joseph Chandler*, for defendant in error.

Opinion by SIMPSON, C.: This was an appeal to the district court of Montgomery county from the award of commissioners, who assessed damages for the right-of-way of the railroad company through the land of the appellant. The case was tried by a jury at the March term, 1888, and is brought here by the railroad company to reverse certain rulings made at the trial. The appellant claimed for the particular land taken; for damages to the entire tract; for the increased inconvenience in farming; for increased labor and expense in fencing and maintaining fences; for interference with the natural drainage; for causing an overflow of water on certain portions of the farm; for increased care, trouble and expense in handling stock; for expenses incurred in constructing and maintaining proper crossings; for increased labor in handling crops growing thereon; for increased cost in cultivating land adjoining the right-of-way; for damage to dwelling-house and out-buildings; for running immediately in front thereof and making a deep cut; for destruction of hedge and apple trees; and for depreciation in market value by increased exposure to fire from the operation of the road. Before the trial the railroad company tendered the sum of $1,185 and costs, which was refused. The jury returned a verdict in favor of the appellant for $3,327.08.

The jury returned answers to special interrogatories, as follows:

"Ques. 1. How many acres of land does plaintiff own in section 30? Ans. One hundred and fifty-three acres.

"Q. 2. Does this acreage include one-half of the river? A. Yes.

"Q. 3. What was the fair market value per acre of this tract of land immediately before the right-of-way for the defendant was condemned across it? A. Fifty dollars per acre.

"Q. 4. For what particular purpose, if any, was this tract

intended and used by plaintiff? A. Agricultural and stock raising.

"Q. 5. How many acres of this tract were appropriated by defendant for its right-of-way, and what was its value? A. Seven and one-tenth acres, at $50 per acre.

"Q. 7. Immediately after the railroad was laid out and the right-of-way appropriated therefor across this tract of land in section 30, what was the fair market value per acre of the residue? A. Forty dollars per acre.

"Q. 8. What was the fair market value of the residue of this tract in section 30, in the aggregate, immediately after the condemnation and appropriation of their right-of-way? A. Five thousand eight hundred and thirty-six dollars.

"Q. 9. If you find any damage to this tract beyond the value of the land taken, state particularly the items of such damage and the amount of each item. A. Inconvenience and loss of time in cultivating and harvesting crops, $400.

"Q. 10. Do you find any damage to this tract in section 30 outside of the value of the land taken because of the inconvenience in handling stock; and if yes, then how much, and is this amount included in your award? A. Yes; amount, $200, which amount enters into our award.

"Q. 11. Do you award any damage to this tract for additional fences required to be built; and if so, for what fences, and how much do you allow for that? A. No.

"Q. 12. Do you allow any damage to this tract of land in section 30 by reason of the railroad embankment obstructing the flow of water, thereby overflowing plaintiff's land outside of the right-of-way, and if so, how much? A. No.

"Q. 13. If you find any damage resulting from such obstruction and consequent overflow, could it not be avoided by proper and sufficient openings through defendant's embankments? A. ———.

"Q. 14. Do you find any damage to this tract in section 30 by reason of inconvenience and loss of time in plowing, planting, cultivating and harvesting upon the triangular pieces of ground on either side of the railroad; and if so, how much do you find, and does that amount enter into and form a part of your award? A. Yes; amount, $400; item first, question 9. This amount enters into our award.

"Q. 15. What was the fair market value per acre of the 20-acre tract in section 36, immediately prior to the condemnation proceedings before referred to? A. Sixty dollars per acre.

"Q. 16. How much of this tract was appropriated by the defendant railroad for its right-of-way, and what was its fair market value at the time of such appropriation? A. One and sixty-three hundredths acres, at $60 per acre, $97.80.

"Q. 17. How much of this tract is south and east of the right-of-way of the railroad, and what was its fair market value immediately after the condemnation proceedings and appropriation of the right-of-way? A. One and one-half acres; no value.

"Q. 18. What was the fair market value per acre of that portion of the 20 acres lying north and west of defendant's right-of-way, immediately after the condemnation and appropriation of the strip to railroad purposes? A. Twenty-five dollars per acre.

"Q. 19. If you find that portion of the 20-acre tract described in the last question to have depreciated in value by reason of the appropriation of this right-of-way and construction of defendant's road, does any portion of that depreciation result from damage to the natural building-spot; and if yes, how much does this amount enter into and form a part of your award? A. Yes; $35 per acre on 17 acres; amount, $595.

"Q. 20. How much land does plaintiff own in section 25, south of the river and east of the Southern Kansas Railroad? A. About 35 acres.

"Q. 21. What was the fair market value of this land per acre immediately before the right-of-way for defendant's railroad was condemned and appropriated through the tracts in sections 30 and 36? A. Fifty dollars per acre.

"Q. 22. What is the distance between defendant's railroad and the tract described at the nearest point? A. Two hundred and seventy-five feet.

"Q. 23. Do you find that the land owned by plaintiff in section 25 is or was in any way depreciated in value or damaged by reason of the condemnation and appropriation of the right-of-way for and construction of defendant's railroad through the lands of plaintiff in sections 30 and 36? A. No.

"Q. 24. If you should answer the last question in the negative, the following question need not be answered: What is the amount of such damage; state particularly the items thereof, and the amount of each of these? A. ——.

"Q. 25. Do you allow any damages to any of the land described for smoke, dirt, noise, or jarring of ground caused by passing trains; and if so, does this amount so allowed enter into your award? A. No.

"Q. 26. In estimating the value of the land taken, do you include in it the value of any fencing which was then on the land taken for defendant's right-of-way? A. No.

"Q. 27. Do you allow damages to any of the land described by reason of increased danger of fire caused by the negligent escape of sparks and cinders from the locomotives of defendant in the operation of its road; and if yes, does the amount allowed enter into your award? A. No.

"Q. 28. Which way does plaintiff's house front, and is there any public highway on that side of the 20-acre tract? A. South, and no highway.

"Q. 29. Do you allow anything for increased danger to stock, caused by the negligence of defendant's employés in the operation of its road; and if yes, does that amount enter into your award? [Refused, and excepted to by defendant.] A. ———.

"Q. 30. Do you allow anything for increased hazard to animals, teams, or stock, caused by being frightened by defendant's trains of cars; and if yes, do you include that in your award? [Refused, and excepted to by defendant.] A. ———.

"Q. 31. Was it a part of the plan of construction of the defendant's road across that tract in section 30 to put in an under-pass for stock about 800 feet west of the river bridge? A. No, it not being shown on profile or map.

"Q. 32. Were the commissioners for the defendant's right-of-way informed of this plan by the engineer having in hand the construction of said road, and did they take it into consideration in their assessment of damages thereto? [Refused, and excepted to by defendant.] A. ———.

"Q. 33. Are those plans being carried out in the construction of defendant's road across said tract in section 30? A. No evidence that it is.

"Q. 34. Do you take that into your consideration in your award and assess your damage to that land on the theory that such pass is now or is to be made? A. No."

The following is a part of the final judgment of the court:

"And the court finds, from said general award of the jury, and their answers to the special questions, that the amount of plaintiff's damages for the actual value of the strip of land appropriated by the defendant, 100 feet wide, through plaintiff's premises, namely: All of the southeast quarter of section 25 south of the Verdigris river, and east of the Southern Kansas

railroad, and the north half of the northeast quarter of the
northeast quarter of section 36, all in township 34 south, of
range 16 east.

"Also all of lots 10 and 11, and that portion of lot 12 west
of, and all of lots 8 and 9 south of the Verdigris river, all in
section 30, in township 34 south, of range 17 east, in Mont-
gomery county, Kansas, and for the consequential diminution
in value of the remaining portion of plaintiff's said land, in
said sections 30 and 36 aforesaid, and for the value of build-
ings and other improvements on said last-named tracts of
land, and for all other damages sustained by the plaintiff by
reason of defendant's appropriation of its said right-of-way
through, upon and across said last-named tracts, and the in-
terest thereon from the date of the appropriation of said strip
of land, to be said sum to which the court reduced the award
of the jury as aforesaid.

"It is therefore by the court considered, ordered, and ad-
judged, that the said award of damages and assessment of
the condemnation commissioners, from which the plaintiff
appealed in this case-made, to the plaintiff and against the
defendant, for its right-of-way of 100 feet wide through plain-
tiff's said premises, be revised, enlarged, corrected and in-
creased to said sum of $2,589, and that the general award of
the jury herein be modified, reduced and decreased to said
amount, which amount shall draw interest from the date of the
award of the jury, at the rate of 7 per cent. per annum, which
said amount, with interest as aforesaid, shall stand in the place
and in lieu of the award of the said commissioners appealed from
as aforesaid by plaintiff, and in the place of the award of the
jury as aforesaid, and shall be paid by the defendant, its suc-
cessors, or assigns, to the plaintiff, the owner of said above-
described premises, before the defendant shall appropriate
said strip as aforesaid, and before it shall have the possession
thereof; and plaintiff shall have and recover of and from the
defendant herein the costs of this action as a personal judg-
ment against the defendant, taxed at $238.05, for which exe-
cution is awarded."

The trial court denied a new trial, but reduced the verdict,
against the consent of the land-owner, to $2,589, and rendered
judgment for that amount. The land through which the
railroad secured the right-of-way consisted of a large tract of
rich bottom soil. The particular part injured by the location

of the road and the construction of the track was south of the Verdigris river and east of the track of the Southern Kansas Railroad. The farm was used for stock and agricultural purposes. The evidence fairly shows that it was the best farm for general agricultural purposes in that neighborhood. The only questions that we can consider, and that are fairly raised by the motion for a new trial and the record, are, first, that the award is not sustained by sufficient evidence; second, that said award is in conflict with and against the special findings of the jury; third, that said award is excessive, and the damages appear to have been given under the influence of passion and prejudice; fourth, errors of law occurring during the trial and excepted to at the time.

I. Considering these assignments of error in their order, it may be said of the first, that there is some evidence to sustain the award.

II. There are some things in the record which tend to show that the jury was actuated by passion and prejudice. We are not unmindful of the fact that the general disposition of jurors in this class of cases is to award liberal compensation to landowners for the land taken from their farms for railroad purposes, and so long as that liberality does not run to excess, or is not caused by passion or prejudice, we will not interfere. But in this case there is hardly an item of depreciation, or an element of damage, but has been assessed by the jury at the very highest estimate placed upon it by the most extreme witness. A general average of the opinion of the various witnesses is the better rule, and generally results in substantial justice, and is a clear indication of the absence of passion or prejudice. Apart from the evident disposition of the jury to adopt the highest and most extreme estimate of value, depreciation, and damage, the action of the trial court reducing the award as returned by the jury from $3,327.08 to $2,589 is to be regarded as very suggestive of the fact that the jury was influenced by passion and actuated by prejudice in returning an excessive verdict. We have searched the record in vain to discover, if possible, the

1. Verdict, reduced; no reason given; new trial.

reason that induced or the motive that controlled the trial judge in the reduction of the verdict. It may have seemed to him, as it does to us, that, taking into consideration all the facts established by the evidence, the mere size of the verdict created a conviction that it was too large. If this is so, he ought to have set aside the verdict and granted a new trial, rather than have attempted to substitute his judgment for that of the jury. The railroad company is entitled to have a fair estimate of damages made by an impartial jury, and we have grave doubts as to whether there has been a due observance of its legal rights in this respect. While it appears to us that the award of the jury is excessive, it is not the function of the court to say how much. The amount ought to be determined by a fair and impartial jury, without prejudice or passion. All we can do in such a case is to see that the jury, in making an award in a case like this, is not influenced by sympathy, feeling, or prejudice, and does not go beyond what is a fair compensation. (*A. T. & S. F. Rld. Co. v. Young*, 26 Kas. 443.)

Going back again to the reduction of the verdict by the trial court, it does not affirmatively appear from the record that the sum of $738.08, which was deducted from the verdict of the jury, was on account of the jury taking into consideration some element of damage not existing in the case, or on account of some error in computation, or some other error occurring at the trial. According to the special findings of the jury, the value of the land taken and the damage to the remainder of the tract aggregated $2,596.80, and this sum comes very close to the verdict as modified by the trial court; but we cannot presume that all the other elements of damage —some of which were sustained by evidence at the trial— would be arbitrarily excluded. Hence the conviction grows stronger that the trial judge reduced the verdict because he thought that it was so excessive that it must have been given under the influence of passion and prejudice. It may be that cases will arise where the verdict and special findings will show

**2. Excessive damages; verdict, when set aside.** some particular fact or some element of damage which would authorize the trial judge to reduce the amount thereof, and that in such a case the judgment rendered upon the reduced verdict would be allowed to stand; but the general rule is, when the damages are so excessive as to show that the verdict is rendered under the influence of passion or prejudice, it should be set aside, and the questions in dispute submitted to the judgment of another jury. The reason for this is, that the parties are entitled to the judgment of a fair and impartial jury, and the judgment of the trial court ought not to be substituted for that of a jury; for, if such a rule should be recognized and maintained, the trial by jury in such cases would be practically denied. (See the cases of the *U. P. Rly. Co. v. Hand,* 7 Kas. 380; *A. T. & S. F. Rld. Co. v. Cone,* 37 id. 567; *Steinbuchel v. Wright,* 43 id. 307; *Cassin v. Delaney,* 38 N. Y. 178.)

Another very good reason for granting a new trial in such a case is, that when the verdict of a jury is tainted by passion or prejudice, the court cannot separate that part of the verdict that is so tainted from the other part, even in a case where the record shows that the prevailing party ought to recover. In this case it appears to us that the plaintiff below was entitled to a verdict for a sum in excess of that allowed by the award appealed from; but when we agree with the trial court that it ought to be reduced, that in fact the verdict was for too much, the only remedy that ought to be applied to this particular case is to grant a new trial. It is a case that comes peculiarly within the province of a jury to determine, and as a matter of legal right either party is entitled to a jury trial, and ought not to be compelled to abide by the judgment of a trial court. For these reasons we are compelled to reverse the judgment. The other errors assigned are serious, but as the case must be reversed it is not necessary to pass upon them, as they may not arise on another trial.

It is recommended that the judgment be reversed, and a new trial ordered.

By the Court: It is so ordered.

All the Justices concurring.