Decided August 16, 1910.

# EX PARTE HARRELL.

[110 Pac. 493.]

CRIMINAL LAW—APPEAL—EVIDENCE—BILL OF EXCEPTIONS.

1. When, on an appeal from a conviction, there was no bill of exceptions, the evidence was not made a part of the record, and therefore the insufficiency of it could not be considered.

CRIMINAL LAW—APPEAL—OBJECTIONS—WHEN CONSIDERED.

2. In a prosecution for murder, defendant could not, on appeal, raise the objection that he did not have a fair trial owing to the intensity of the sentiment against him, where it did not appear that he had made a motion for a continuance, or a change of venue, or had filed any affidavits to show that the jury were prejudiced.

CRIMINAL LAW—APPEAL—MATTER OF RECORD—CONSIDERATION.

3. In a prosecution for murder, the question whether the trial court was authorized to reconvene before the next term where it had adjourned without designating a day for reconvening could be considered on an application to the Supreme Court for a certificate of probable cause, although there was no bill of exceptions, as the matter could be ascertained from an inspection of the transcript.

COURTS—DURATION OF TERM.

4. A term of court does not come to an end by failure to adjourn to a specific time, but, when commenced, it continues until terminated by an affirmative judicial act, or by commencement of a new term.

COURTS—ORDER OF ADJOURNMENT—ADJOURNMENT FOR HOW LONG— PRESUMPTION.

5. Where, in the order of adjournment of a circuit court, there were no words indicating a purpose finally to suspend the business of the court for the term, and, in the absence of the qualifying phrase *"sine die"* or other equivalent expression, it should be presumed, in favor of a court of general jurisdiction, that the term continued until the time appointed by law for the next session.

COURTS—ADJOURNMENT—POWER TO CONVENE.

6. Although a circuit court had adjourned during a term without setting a day for convening, yet it could convene and transact business where due notice had been given.

COURTS—ORDER OF ADJOURNMENT.

7. The order of adjournment of a circuit court in the midst of a term, in which the jury were told that they were dismissed as there was no business to transact, but that they were to return promptly when notified to appear, and that the court intended to have another sitting at that term, and equivalent to a direction to the clerk that the term should be unclosed, subject to resuming business when commanded by the court; due notice having been given.

CRIMINAL LAW—APPEAL—CONVICTION—PLEA OF GUILTY.

8. The exception in Section 548, B. & C. Comp., providing that a party to a civil action may appeal from a final determination of his

cause, unless the judgment was given by consent or for want of an answer, is not applicable to a conviction in a criminal action, based on a plea of guilty.

CRIMINAL LAW—APPEAL—PETITION TO STAY THE EXECUTION.

9. Where defendant was convicted of murder to which accusation he pleaded guilty, his petition for a stay of the execution pending an appeal should clearly point out that a substantial error has been made, as evidenced by the transcript or bill of exceptions.

From Lake: GEORGE NOLAND, Judge.

Isaac N. Harrell was tried and convicted of murder in the first degree. This is an application for certificate of probable cause and a stay of execution pending an appeal from a judgment of death.　　　CERTIFICATE DENIED.

*Mr. Thomas S. Farrell* for appellant.

Opinion PER CURIAM.

This is an application for a stay of execution pending an appeal from a judgment of death. The defendant, Isaac N. Harrell, was indicted July 5, 1910, for the crime of murder in the first degree, alleged to have been committed in Lake County by killing Walter Newell. A motion was filed to set aside the indictment on the ground that it was not found, indorsed, or presented as required by law, in that the grand jury returning the same had no authority to inquire into the commission of the crime charged because the court on May 12, 1910, adjourned without designating any day for reconvening, and the time appointed for another term of the court had not arrived when the formal accusation was found. This motion was denied, whereupon a demurrer to the indictment, based practically on the same ground as stated in the motion, having been interposed and overruled, the defendant entered a plea of guilty as charged. The court then took testimony as to the grade of the homicide, and, finding the crime to have been murder in the first degree, imposed the sentence indicated.

The transcript directing attention to a regular term of the circuit court for Lake County contains a copy of a

journal entry purporting to have been made May 12, 1910, as follows: "Whereupon court adjourned to Friday, July 1st, A. D. 1910, at 4 o'clock P. M." The record brought up also includes copies of journal entries of sessions of the court held at the day so appointed and at other times, including July 9, 1910, when the judgment herein was rendered. Based on the motion of defendant's counsel, which was supplemented by an extended copy of shorthand notes, a *nunc pro tunc* order was made July 7, 1910, as and for the previous May 12th, relating to the antecedent adjournment, and stating, in effect, that it appeared to the court: That the grand jury have not completed their labors or been discharged, but have ordered the examination of the body of a person whose death was supposed to have been caused by poison, and have deferred sitting to await the report of the physician engaged to make the autopsy. That the following announcement was made, to-wit: "After sume subsequent time during this term, I think the court will be back here in the late summer or early fall, about these Silver Lake damage cases." That there are still pending causes in which further action is required at this term, giving a list thereof. One of the attorneys, alluding to the term and to when in his opinion the court ought to reconvene, said: "We think it should be left open for a while, and we would then take it up with your honor in the course of a few weeks, and we will endeavor to see that the jurors are notified through the sheriff's office." Whereupon the judge replied: "Very well, I will agree to your request in that matter." That the court made the following address and order, viz.:

"Gentlemen of the jury, it appears that there is nothing here for you to do. You have served very diligently and faithfully, and for some reason or other those indicted have pleaded guilty, and now the time has come to dismiss this jury. You may be excused until such time as you are notified to appear here. Then all of you come promptly at the time and we will all go to work."

Sig. 4

That adjournments have been made in this judicial district for many years without designating any particular day for reconvening.

"And the court not being advised when the grand jury will complete its work, * * nor what date should justly be set for the trial, or further proceedings in the causes named above, nor when said petit jury should be recalled, * * and the court having the intention to resume sittings at this term, * * at such time as any report of said grand jury, * * or further proceedings in the cases named, or other cases, or any other business should require it, the court thereupon adjourned."

A conviction in a criminal action is not stayed by an appeal from the judgment, unless the trial judge or a justice of the Supreme Court issues a certificate that in his opinion there is probable cause for the appeal. Section 1475, B. & C. Comp. In the application herein, the errors assigned, and upon which the defendant's counsel will rely for a reversal of the judgment, are (1) the denial of the motion to set aside the indictment; (2) the overruling of the demurrer interposed to the formal accusation; (3) that the evidence received was insufficient to support the finding of murder in the first degree; (4) that the defendant was not given a fair hearing, but was compelled to go to trial at a time when public sentiment was so intense that it was impossible for him to secure an impartial consideration of the cause by a jury.

1. No bill of exceptions has been brought up, but there was filed with the transcript an extension of the official reporter's stenographic notes of the testimony certified to by him. Though the defendant entered a plea of guilty to the crime charged, the court in accordance with the statute, Section 1755, B. & C. Comp., heard proof and determined the degree of murder. No bill of exceptions having been settled or allowed, the testimony referred to is not properly a part of the record, and it will not be examined to ascertain whether or not any error was com-

mitted in establishing the degree of the homicide. *Ex parte Wachline*, 32 Or. 204 (51 Pac. 1094) ; *Ex parte Warren*, 41 Or. 309 (71 Pac. 644.)   The third designation of alleged misapprehension of law will therefore be disregarded.

2. It does not appear that any motion for a continuance or for a change of venue was interposed, or that any affidavits were filed to show that the citizens of the county, subject to jury duty, were prejudiced against the defendant, or that he could not obtain a fair and impartial trial, and hence the question advanced by the fourth assignment is not before us.

3. The first and second specifications of error suggested by denial of the motion to set aside the indictment and raised by overruling the demurrer present practically the same question, and will be treated as a single inquiry. It was held in the two cases to which attention has been directed that, unless a bill of exceptions accompanies the transcript on appeal from a judgment of conviction in a criminal action, no certificate of probable cause will be issued.   The legal principle thus announced was applicable in those cases, where the errors relied upon related to rulings upon matters of evidence, which could only be made a part of the record by a bill of exceptions. Whether or not the court was authorized to reconvene in July, 1910, after having adjourned without designating a day for reassembling, can be ascertained from an inspection of the transcript, and hence a bill of exceptions is unnecessary to determine the question.

4. Terms of the circuit court for Lake County are required to be held, commencing on the second Monday in May and the third Monday in October of each year.   Section 2492, B. & C. Comp., as amended.   Laws Or. 1905, p. 262.   That the suspension of the May term, 1910, was not intended to be final by the adjournment on the 12th of that month, is apparent from the court's direction to the

jury to return promptly when notified, and by retaining the grand jury who were expecting the report of a physician employed to make a *post mortem* examination in order to learn the cause of the death of a person. In *Irwin* v. *Irwin,* 2 Okl. 180, 192 (37 Pac. 548, 551), it was held that a court, having adjourned without designating a day on which to meet again, was suspended until the next regular term. In deciding that case Mr. Chief Justice DALE says:

"To retain the power within himself and to control the times at which his court shall convene, the judge must at each adjournment specify a time certain as the date when his court will again meet, or lose the power to hold any further sessions until the time as fixed by law. If this were not true, great injustice would frequently happen to litigants. A court could, as was done in the case under consideration, adjourn without fixing a time to again convene, and at a time entirely optional with the court, again convene and proceed to transact business, render judgments and decrees which might work great injustice, if such business were done in the absence of either of the parties to an action. And yet no redress could be had by the aggrieved party because the court would be in regular session and his judgments in all respects in conformity with law. It was not the intention of the legislature to make it possible for courts to so transact their business, and no litigant should be kept in ignorance of the times when the court will sit."

If, under the circumstances indicated in the language quoted, a court after adjourning without designating a day for reassembling could convene, try causes, and render valid judgments and decrees without notifying interested parties, we yield our consent to the conclusion thus announced. In the sparsely settled counties of Oregon, though the practice of adjourning court without designating a day for convening is common, no appeal has been brought to this court where the error assigned has been the lack of sufficient notice to interested parties of the reassembling of the court, or the want of an adequate

opportunity to secure witnesses or properly to prepare for trial. When a juror is late, or a witness absent, it has been frequently announced by the court that a recess would be taken until a stated hour, but if, prior to the time specified, the juror reports for duty or the witness arrives, notice is given to the interested parties and on their return the dispatch of business is resumed. So, too, where, as in the case at bar, an adjournment has been taken without designating any day for reassembling, the court upon sufficient notice to all parties concerned has convened, no prejudice or injury has resulted, and such satisfactory outcome induces the conclusion that to adopt the theory now advanced by defendant's counsel might possibly overturn judgments and decrees that have been considered finally determined. We think the better rule, and the one more consonant with reason, is announced in *State ex rel.* v. *McBain,* 102 Wis. 431 (78 N. W. 602), where it was held that a term of court had not come to an end by failure to adjourn to a specific time, but that once commenced it continued until terminated by an affirmative judicial act or by the commencement of a new term.

5. It was held in *Union Pacific Railway Co.* v. *Hand,* 7 Kan. 380, 387, that a court when legally opened for general purposes continued in session until it adjourned *sine die,* or expired by operation of law. In deciding that case, Mr. Chief Justice Kingman said:

"The term of the court is fixed by law. Having once opened, it so continues till the term expires, or an adjournment *sine die* is made. The adjournment from day to day does not suspend its functions. After the court has adjourned for the day, it is a common practice for grand juries to continue their sessions, swear witnesses, pursue their investigations, and find bills, and petit juries frequently remain out all night in deliberation, and make up their verdicts, while the journal shows that the court has adjourned. Each of these juries is part of the court, performing important functions; and the court is always in session in fact, so that it can protect the juries, and enforce proper conduct on their part."

6. In the case under consideration, no words are to be found in the order of May 12, 1910, indicating a purpose finally to suspend the business of the court for the term, and in the absence of the qualifying phrase *"sine die"* or other equivalent expression, it should be presumed, in favor of a court of general jurisdiction, that the term continued until the time appointed by law for the next session required to be held in that county: *Deering* v. *Qu·vey*, 26 Or. 556, 560 (38 Pac. 710.) This presumption is strengthened by the incidents hereinbefore adverted to, and we are satisfied that it was not the intention of the court to adjourn for the term on May 12th, and that as due notice of the session which was held commencing July 1, 1910, must have been given, as is evidenced by the finding of the indictment herein, the court was authorized to hear and determine causes when it so reconvened.

7. The order of adjournment was equivalent to a direction to the clerk that the term should be unclosed, subject to resuming business when commanded by the court, due notice of which was required to be given. Thus, as was said in *State ex rel.* v. *McBain,* 102 Wis. 431, 434 (78 N. W. 602, 603) :

"The court had not adjourned to a specific day, but had merely made an order, now become entirely customary with our courts and with the courts of the United States, that the term be 'held open,' the effect of which is merely that the adjournment is to a time to be fixed in the future according to the exigencies of business."

8. In the examination by a justice of this court of a bill of exceptions, in order to determine whether or not to issue a certificate of probable cause for an appeal from a judgment in a criminal action, based on a plea of not guilty, the practice has been to stay the enforcement of the sentence, if the error relied upon be considered fairly debatable. In the case at bar, however, it must not be forgotten that the defendant entered a plea of guilty to an indictment charging that he purposely and of deliberate

and premeditated malice killed Walter Newell by shooting him with a pistol, and that, after taking evidence to ascertain the character of the offense, the court determined the crime to have been murder in the first degree, and gave judgment accordingly. A party to a civil action may appeal from a final determination of his cause, unless the judgment was given by consent or for want of an answer. Section 548, B. & C. Comp. This restriction is not applicable to a conviction in a criminal action, based on a plea of guilty.

9. A petition for a stay of the enforcement of a judgment pending an appeal ought clearly to point out actions of the trial court, evidenced by the transcript or bill of exceptions, an examination of which satisfactorily establishes that an error, affecting a substantial right, has been committed.

In view of the plea interposed and of the course pursued, we do not think there is probable cause for the appeal and a certificate to that effect should be denied, and it is so ordered.          CERTIFICATE DENIED.