*In the Matter of the Application of* MATTHEW MCCLASKEY *for a Writ of Habeas Corpus.*

1. COURTS—*Adjournment by Clerk*—The presence of the judge of the district court in and for Payne county, O. T., on the first day of the November term, 1892, of that court, was indispensable to the validity of the subsequent proceedings purporting to have been held in the November term of that court; and the clerk of the court had no authority, in the absence of the judge, to adjourn the court to a future day, nor had the judge power, while in another county, to authorize the clerk of the court to exercise any judicial powers in the opening and adjourning court. (*In re. McClaskey*, supreme court of Kansas, October 7, 1893, 34 Pac. Rep. 459.)

2. SAME—When the time fixed by law for the holding of a term of court arrives, and the judge is not present, the clerk of the court cannot, in the absence of statutory authority to that end, adjourn the court to a future day.

3. SAME—In the absence of such a statute, the consequence of the non-attendance of the judge is the lapse and loss of the term.

4. SAME—The court must exercise its jurisdiction within its terms as regulated by law; and, where a person is tried and convicted at a time when the court cannot be legally held, the proceedings are void, and the judgment a nullity. (*In re. Terrill*, supreme court of Kansas, October 7, 1893, 34 Pac. Rep. 457.)

5. JEOPARDY—A person is not in legal jeopardy until put upon trial before a court of competent jurisdiction, under an information or indictment, sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance—that is, empaneled and sworn. (Cooley's Const. Lim. 327, 328 and cases cited.)

6. SAME—If a defendant is tried, convicted and judgment pronounced, and such defendant incarcerated in the penitentiary in execution of the judgment, and subsequently remanded to the trial court for further proceedings upon the ground that said trial court had not jurisdiction, said defendant has not been once in jeopardy within the constitutional meaning.

*Original Proceeding in Habeas Corpus.*

Original action filed in the supreme court for writ of *habeas corpus* January 22, 1894, by Matthew McClaskey, held by the sheriff of Payne county, Oklahoma Territory. Writ denied. The facts are embraced in the opinion.

*C. R. Buckner & Sons*, for petitioner.

*C. A. Galbraith, Attorney General*, and *Sterling P. King*, for the Territory.

The opinion of the court was delivered by

SCOTT, J.: The petitioner, Matthew McClaskey, filed his petition in this court praying for a writ of *habeas corpus* on the 22d day of January, A. D. 1894. The action is instituted upon the theory that he has been once in jeopardy, within the meaning of the constitutional guarantee that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." On the 16th day of August, 1892, the petitioner was indicted by the grand jury of Payne county, charging him with the murder of John J. Anderson, and on the 18th day of November, 1892, was found guilty of said charge and his punishment assessed by the jury, under the law, at imprisonment at hard labor, for life. In execution of this sentence he was trans-

ported to the penitentiary at Lansing, Kansas, where he remained incarcerated until his discharge from the the custody of the warden, on the 7th day of October, 1893, by the supreme court of said state, and placed by him in the hands of the sheriff of Payne county, by authority of the following order:

*In re: Matthew McClaskey.*

"This cause comes on for decision and thereupon it is ordered and adjudged that the petition for the writ of *habeas corpus* be allowed, and that the petitioner, Matthew H. McClaskey, be released from imprisonment in the Kansas state penitentiary, and forthwith delivered by the warden of said penitentiary into the custody of the sheriff of Payne county, Oklahoma Territory, there to answer the charges in the indictment under which he was originally arrested. It is further ordered that the respondent pay the costs of this case in this court, taxed at $— and hereof let execution issue.

"(SEAL)    D. J. BROWN, Clerk of Supreme Court."

This order was complied with and the petitioner delivered to the sheriff of Payne county and is now being held awaiting further proceedings before the district court of that county, in the meantime praying discharge, assigning therefor in substance the following specific legal grounds:

1. That the charge upon which the petitioner is held has been fully investigated by a court of competent jurisdiction and that upon said investigation said petitioner was ordered discharged.

2. That the petitioner has been tried, convicted, judgment entered and sentence passed upon him, and that in execution of said sentence petitioner has been incarcerated in the penitentiary at Lansing, Kansas, and having had a hearing on a writ of *habeas corpus* by the supreme court of the state of Kansas, was ordered discharged from said penitentiary.

3. That no further proceedings upon the charge for

which he is held ought to be had against him for the reason that, at the April term of the district court of Payne county, said petitioner was put upon his trial and found guilty and sentence passed, and in execution of said sentence and judgment, petitioner was incarcerated in the penitentiary at Lansing, Kansas.

4. That the petitioner was, on the 16th day of August, 1892, indicted on the charge for which they now hold him, at which date and time the petitioner alleges there was no court or grand jury in session in Payne county.

5. Two or more terms of court for Payne county has passed since petitioner has been in custody, and that more than one term of court has passed since petitioner was indicted upon the charge he is now held, and that the petitioner has in no way continued, delayed or hindered his trial.

6. That there is no legal warrant or commitment or other legal process on which this petitioner is held, issued from any court.

While the petitioner seeks a discharge on several grounds, the only one seriously urged is the technical question raised as to whether the trial, conviction, sentence and subsequent imprisonment of the petitioner operates as jeopardy within the meaning of the law.

In considering his alleged illegal restraint, the supreme court of Kansas, Justice Johnson, speaking for the court, (34 Pac. Rep. 459,) uses this lauguage:

"This is a proceeding in *habeas corpus* to release from custody Matthew H. McClaskey, who is imprisoned in the state penitentiary at Lansing, Kansas. The proceeding presents substantially the same question that has just been decided in the case *in re Terrell*, 34 Pac. Rep. 437. The petitioner was indicted for murder at the April term, 1892, of the First judicial district for the Territory of Oklahoma, within and for

Payne county. A trial was attempted on November 14, 1892, at what purported to be the November term of the court, which resulted in a conviction, and a sentence of imprisonment at hard labor for life. He was committed to the state penitentiary of Kansas, it being also the prison for the Territory of Oklahoma. The November term of the court should have begun on the first day of that month, but the Honorable E. B. Green, who was the presiding judge of the court, failed to attend. He sent an order from another county, by mail, directing an adjourument of the court until the 10th day of November, 1892. When the 10th of November arrived, the judge of the court was again absent. The clerk undertook to adjourn the court until the following day. Upon that day the judge appeared, and convened court, after which followed the trial and conviction of the petitioner.

"The failure of the judge to appear and open court upon the 1st day of November, resulted in the loss of the term. The presence of the judge at the time appointed by law for the holding of the court was indispensible to the validity of the subsequent proceedings, and the judge had no authority, by an order made in another county, to authorize or direct the ministerial officers to exercise judicial powers in opening and adjourning court. (*In re Terrell, supra.*) Following the judgment in the *Terrell* case the respondent will release the petitioner from imprisonment in the penitentiary and deliver him to the custody of the sheriff of Payne county, O. T., there to answer the charges in the indictment under which he was originally arrested. All the Justices concurring."

Justice Johnson, speaking for the court, in the *Terrell* case referred to, in the language just quoted, (34 Pac. Rep. 457), covering the question as to the legality of the April term of the same court more fully, and involving exactly the same legal question, says:

"An indictment was returned by the grand jury of Payne county, O. T., charging Ira N. Terrill with the offense of murder, and at a trial held September 26, 1892, he was convicted of the offense charged, and the

punishment fixed by the jury was imprisonment in the penitentiary at hard labor for life. Subsequently the sentence of the court was pronounced, adjudging that Terrill be confined in the territorial penitentiary, at Lansing, Kansas, for the term of his natural life, where he was conveyed and is now held in custody by the warded of that prison. He seeks release here by a proceeding in *habeas corpus*, and in his application he alleges several grounds why his imprisonment is illegal, only one of which it will be neccessary to notice. He asserts that the trial was had, and the judgment rendered, at a time not authorized by law; that the court was then without jurisdiction to take any proceedings against him and hence the sentence and judgment of the court are absolutely void.

"In pursuance of law, the terms of the district courts of Oklahoma were fixed by order of the supreme court and the terms are required to be held in the county of Payne, commencing on the third Tuesday in April, and the first Tuesday of November, of each year. The petitioner was tried in 1892, and during the time within which the April term might have been held, but it appears that the judge of that court was not present at the time and place when the April term of court should have begun, nor was he present in person several days afterwards. The court should have been opened on April 19, but the judge did not appear until the 26th of that month, when he opened and held court until April 30, 1892. Several adjournments were made by the court, one of which was to June 14, 1892, but the judge of the court again failed to appear, when the clerk attempted to adjourn the court until August 16, 1892. At the latter date the judge appeared in person and held court from time to time, with intervening adjournments, until September 26, 1892, when the trial and conviction of the petitioner occurred. The failure of the judge to appear and open court upon the day appointed resulted in the loss of the term, and proceedings had by a court at a time not authorized by law are absolutely void. There was then no statute of Oklahoma providing for the adjournment of the court by the clerk or other of its officers in case of non-attendance of the judge. A statute, since enacted, and which went into effect in

August of the present year, provides that if the judge of a court fails to attend at the time and place appointed for holding his court, the sheriff shall have power to adjourn it from day to day until the judge do attend, or a judge *pro tem.* is selected; and if the judge is not present, and a judge *pro tem.* is not selected within two days after the first day of the term, the court stands adjourned for the entire term. (St. Ok., ¶ 4626.) There is ample power in a court which has been regularly convened to adjourn to a future time, provided it be not beyond the term; but in the absence of a statute authorizing it, the clerk or other ministerial officer cannot act for the judge in either opening or adjourning court. The clerk is a ministerial officer, and, without statutory authority, can exercise no·judicial function. The opening, holding and adjournment of court are the exercise of of judicial power to be performed by the court.

"To perform the function of a court, the presence of the officers constituting the court is necessary, and they must be present at the time and place appointed by law. A 'court' is defined by Bacon to be 'an incorporeal being, which requires for its existence the presence of its judges, or a competent of them, and a clerk or prothonotary, or at or during which and at a place where it is, by law, authorized to be held, and the performance of some public act indicative of the design to perform the functions of a court.' (Bac. Ard. Tit. 'Court' A, Hawes Jur. Sec. 27): 'To give existance to a court, then, its officers and the time and place of holding it, must be such as are prescribed by law.' (*Hobart vs. Hobart*, 45 Iowa, 503). There being no authority in law for the clerk to open and adjourn court, the consequence of the failure of the judge to appear, upon the day appointed for holding the court, was the loss of the term. (*Railway Co. vs. Hand*, 7 Kan., 380; *People vs. Bradwell*, 2 Cow., 445; *People vs. Sanchez*, 24 Cal. 17; *State vs. Roberts*, 8 Nev. 239; Brown, Jur. Sec. 22, 12 Amer. and Eng. Enc.* Law, 296). In the case of *Wright vs. Wallbaum*, 39 Ill., 554, the court was regularly in session on the 23d of August, and regularly adjourned until the following day. After that time several adjournments were entered when no judge was present. In reviewing the question the court

said : 'After the 23d, for want of a judge, no legal business could have been transacted, and for that reason the court stood adjourned. The judge who opened court might, no doubt, have adjourned to a specified day, had the business of the court required it, and business might have been regularly resumed at that time. The judge had no power to authorize the ministerial officers of the court to exercise judicial powers, even in opening and adjourning the court. They not having such authority, and the court not having been opened on the 24th by a judge authorized to exercise the jurisdiction of the court, it stood adjourned after the 23d, and that must be regarded as the last day of the term.' (See, also, *In re Millington*, 24 Kan., 214; *Lewis vs. City of Hoboken*, 42 N. J., Law 379; *Hoye vs. State*, 39 Ga., 718; *Wright vs. Karsner*, 20 Ala., 446; *Brumley vs. State*, 20 Ark., 77; *Thomas vs. Fogarty*, 19 Cal. 644.)

"The failure of the judge of the district court for Payne county, Oklahoma, to attend and open court upon the appointed day, operated to end the term, and no further session of the court could be held until the next regular term, or until a specified term was legally called. To meet such exigencies, most of the states have enacted statutes for preserving the term similar to those now in force in Oklahoma Territory and in Kansas. In the absence of such a statute, the clerk was powerless to keep the court open until the arrival of the judge, many days after the time for the commencement of the term. The petitioner was tried after the April term had lapsed, and the proceedings in connection with his trial and conviction must be regarded as *coram non judice* and void. Although the right of the court to inquire into the illegal restraint of the petitioner is questioned, no substantial objection to its jurisdiction, is, or can be, urged. He is imprisoned in Kansas, and within the jurisdiction of the court, and there is undoubted power in the court to inquire into the cause of his restraint. Having been tried and convicted at a time when the court could not be legally held, the court was without jurisdiction and the conviction was void. While the petitioner must be released from imprisonment at the penitentiary and from the custody of the warden, our judgment will not

operate as an unqualified discharge. So far as appears here, he was regularly indicted, and as the proceedings had against him were without jurisdiction, and void, it is possible there was no jeopardy and that another trial may be had. The warden will therefore be directed to release the petitioner from imprisonment in the penitentiary, and deliver him to the custody of the sheriff of Payne county, Oklahoma Territory, and for such further proceedings as the prosecuting officers may desire to take. All the Justices concurring."

The court has fully and carefully examined the decisions of the supreme court of Kansas in the cases of *McClaskey* and *Terrell*, just quoted, and all the authorities cited therein, and fully concur in the doctrine and will decide this case, conceding the correctness of the law as thus announced. This renders the legal status of the petitioner very clear. He was tried, convicted and sentenced, at a time when court could not be legally held in Payne county under the law, and therefore all proceedings at said time and place were *coram non judice*. After the pronouncement of the judgment, the petitioner was imprisoned in the penitentiary. at Lansing, Kansas, which was also the prison for Oklahoma Territory, under and by authority of a statutory provision authorizing the governor to contract for the care of prisoners convicted under the laws of Oklahoma, outside of the territory, in the absence of a territorial penitentiary here. The petitioner does not contend that his trial, sentence and conviction alone constitutes jeopardy, but avers that his incarceration in the penitentiary, in execution of the judgment of the court, carries with it, *eo instante*, jeopardy within the meaning of the law. In other words, the instant the petitioner was incarcerated in pursuance of such judgment, jeopardy attached. The petitioner cites numerous authorities in support of his contention. (*Ex parte Lang*, 18, Wallace, 163; *State vs. Cooper*, 1 Green, N. J., 375; *Commonwealth vs. Land*, 3

Metcalf, (Mass.), 328; *Herman vs. U. S.* 50 Fed. Rep. 921; *ex parte Friday*, 43 Fed. Rep. 919; *Case of James Feeling*, 12 Cush. (Mass.) 598.) The distinction sought to be made and the argument offered to sustain this new doctrine advanced by the petitioner, are indeed too fine for human conception. Among the cases cited is *ex parte Lang*, 18 Wall. 163. This case does not decide the question at all, · by inference or otherwise, and is wholly inapplicable to the case at bar. It never was the law that jeopardy ever attached unless the trial court had jurisdiction, nor is it the law now, nor does this case, or any of the authorities cited, declare such a startling departure from a line of decisions reaching back to the very beginning of American criminal jurisprudence. The petitioner was returned to the custody of the sheriff of Payne county and is now held for trial by a court that has jurisdiction.

This he has the right to demand, and this is what is guaranteed to every citizen under the constitution of the United States; and until such a trial is had, there can be no jeopardy. In view of the illegality of the pretended court at which the petitioner was convicted, his trial, conviction and sentence has no greater significance than a trial, conviction and sentence by a pretended court, organized by private citizens of the country, and subsequent incarceration would not, in either case, have the effect of rendering such a trial a legal one, or investing jurisdiction when in law it never had existed. If this were true, every defendant, suffering from an illegal imprisonment, would have been, according to the contention of the petitioner, once in jeopardy without reference to the question of jurisdiction.

Jeopardy, in its constitutional or common law meaning, has a strict application to criminal prosecutions only. A person is not in legal jeopardy until

put upon trial before a court of competent jurisdiction, under an information or indictment, sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance—that is, empanneled and sworn. (Cooley's Constitutional Limitations, 327 and 328 and cases cited; *Hilands vs. Commonwealth*, 111 Pa. 4; *United States vs. Gilbert*, 2 Sumn. 38-62 (1834) Story, J.; 4 Wash. 202; 44 Wis. 287; *People vs. Horn*, 70 Cal. 18; 24 Central Law Journal, 563; 17 Am. Law. Rev. 735-53; 4 Cr. Law. Mag. 31-36-487-508; 71 Ala. 309; 38 Cal. 467; 59 Iowa, 473; 5 Ind. 290; 78 Ky. 96; 1 Gray, 490; 105 Mass. 189; 38 Me. 574; 12 Vt. 93; L. R. Q. B. 289; 2 Benn. & H. Ld, Cr. Cas. 327).

This guarantee of personal security became a part of the constitution of the United States by amendment, ratified December 15, 1791, and in no case before or since that date has it ever been announced that jeopardy ever attached, unless a defendant had been put upon trial before a court of competent jurisdiction.

Thus, in the case before us, unless it appears that the April term of the district court of Payne county was a court of competent jurisdiction, the petitioner has not been in jeopardy within the constitutional meaning. It has been held that the court that tried the petitioner was not one of competent jurisdiction. Indeed, this fact is the cause of the petitioner's disdischarge from the custody of the warden of the Kansas penitentiary, and his return to the authorities of Payne county. He stands in the same position exactly now as he would had this point been raised on the trial, and the case appealed to this court and reversed, and the cause remanded for a new trial. The fact that his rights have been ascertained and determined by a proceeding in *habeas corpus*, gives him no more than a right to a new trial.

Hence, the point raised by petitioner, that on ac-

count of his return to Payne county authorities, as the record discloses, on *habeas corpus*, that he is entitled to an unqualified discharge, is untenable.

It is ordered that petitioner be held for further proceedings at the first regular term of the district court of Payne county.

All the Justices concurring.