SOUTHWESTERN SURETY INS. CO. v. DOUGLAS et al.

No. 9884—Opinion Filed May 3, 1921.

(Syllabus.)

1. Courts—District Courts — Terms — Adjournments.

A district court legally opened for all general purposes continues in session until it adjourns sine die, or expires by law, and when an adjournment is made subject to call, the term not having then expired by law, and it convenes, the court is legally constituted, and its acts are valid and binding.

2. Action—Joinder of Causes of Action—Statute.

Revised Laws of 1910, sec. 4738, authorizes the uniting of several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable or both, where they all arise out of the same transaction or transactions connected with the same subject of action.

3. Reformation of Instruments—Scope of Relief.

As courts of equity have always asserted the right to give complete relief on all matters properly brought before them, the party who seeks in a court of equity relief by reformation of a written instrument or bond may ask and obtain reformation thereof and damages for breach of a condition of indemnity therein contained, when reformed.

4. Same—Action on Guardian's Bond—Affirmance.

Record examined, and it appearing that substantial justice has been done, the judgment of the trial court is affirmed.

Miller, J., dissenting.

Error from District Court, Okfuskee County; J. W. Bolen, Assigned Judge.

Action by Duard C. Douglas, a minor, by E. Huser, his guardian, against the Southwestern Surety Insurance Company and others on guardianship bonds. Judgment for plaintiff and defendant Southwestern Surety Insurance Company appeals. Affirmed.

J. C. Wright and S. L. O'Bannon, for plaintiff in error.

Martin L. Frerichs and E. Huser, for defendants in error.

MILLER, J. This was an action commenced in the district court of Okfuskee county on the 25th day of May, 1917, by Duard C. Douglas, a minor, by E. Huser, his guardian, as plaintiff, against Harry Douglas, W. H. Dill, and the Southwestern Surety Insurance Company, as defendants, to recover against Harry Douglas, as principal, and the other defendants, as sureties, under separate guardianship bonds executed by them. The said sureties were by the petition asked to respond for the default of Harry Douglas as guardian of the plaintiff. The case was tried to the court without a jury on the 23rd day of October, 1917. The court rendered a judgment in favor of the plaintiff and against defendant Harry Douglas, as principal, and defendant Southwestern Surety Insurance Company, as surety, in the sum of $1,612.90, with interest and costs. Defendant Southwestern Surety Insurance Company excepted to the judgment of the court, gave notice of appeal as required by law, and perfected this appeal.

The plaintiff in error sets out the following assignments of error:

"(1) Said court erred in overruling the motion of plaintiff in error for a new trial.

"(2) Said court erred in not rendering judgment for the plaintiff in error upon the evidence submitted at said trial.

"(3) Said court erred in rendering any judgment in any sum whatsoever against this plaintiff in error and in favor of the defendant in error Duard C. Douglas, for the reason that the same was not supported by the law or by the evidence.

"(4) Said court erred in overruling the plaintiff in error's motion in arrest of judgment, designated as motion to vacate judgment."

The plaintiff in error then raises the question of the jurisdiction of the court to hear and determine this action at the time it attempted to do so, contending that the court was not legally in session.

The journal entry of judgment makes this recital:

"This cause coming on to be heard in its regular order on this the 23rd day of October, 1917, one of the regular judicial days of the August, 1917, term of the district court."

Thereafter a motion was filed to vacate the judgment, which motion reads:

"Comes now said defendant, Southwestern Surety Insurance Company, and moves the court to vacate and set aside and hold for naught the purported judgment rendered herein on the 23rd day of October, 1917, for the following reasons, to wit:

"I. For the reason that said judgment is void and has no binding force or effect against the' defendant, Southwestern Surety Insurance Company.

"II. For the reason that the court was without jurisdiction to hear, try and determine the same, or to render judgment therein· at the time said purported judgment was rendered.

"III. For the reason that the court was not legally 'in session at the time the aforesaid purported judgment was rendered.

"Wherefore defendant prays the court to vacate, set aside and hold for naught the aforesaid purported judgment rendered herein on the 23rd day of October, 1917, as aforesaid."

The above motion was passed on by the court and the following order made:

"Now on this the 7 day of Jan., A. D. 1918, the same being a regular judicial day of the November term of said court, the above-entitled cause coming regularly on for hearing upon motion of defendant to vacate judgment, the court being fully advised and informed in the premises, motion is overruled; exceptions allowed."

The fourth assignment of error of the plaintiff in error is as follows:

"Said court erred in overruling the plaintiff in error's motion in arrest of judgment, designated as motion to vacate judgment."

This raises a jurisdictional question which will be given first consideration.

Chapter 9, Session Laws of 1915, prescribes the time for convening the regular term of court in certain districts, among which is district No. 9,·in which Okfuskee county is situated. It reads:

"The time of the convening the regular term of district court in each county in judicial districts number two. seven and number nine, of the state of Oklahoma, shall be on the first Monday in each of the respective months hereinafter set out in this section after each of the respective counties, to wit: * * *

"District number nine: In Hughes county,· March, July and December. In Okfuskee· county, February, August and November."

We find that the first Monday in August, 1917, occurred on the 6th day of that month. Plaintiff in error says in its brief it admits that the court was regularly in session on August 6, 1917. The case-made then contains a complete record of the adjournments and convening of the district court of Okfuskee county from August 6th until the convening of the next term, which is on the 5th day of November, 1917. It will not be necessary to set each and everyone out in full, but we will·set out sufficient of them for the purpose of passing on the jurisdictional question.

"Now on this the 6th day of August, A. D. 1917, the same being the regular day of the August term of said court, the court orders that court be adjourned and the same is hereby adjourned, but it is not the intention of the court to adjourn, sine die, but the same is adjourned subject to call."

Pursuant to the foregoing adjournment "subject to call," court did not convene until September 10th, when court was convened as follows:

"Now on this the 10th day of September, A. D. 1917, court convened, pursuant to adjournment:

"Present: Hon. Geo. C. Crump, judge; M. C. Jones, county clerk; Berry Jones, sheriff; T. S. Hurst, county attorney; A. F. Hall, court reporter.

"Public proclamation of the opening of court having been announced, the following. among other proceedings, were had, to wit:"

It then appears that court was in session on September 10th, 11th, 12th, 13th, 14th, and 15th, when the following order was made:

"Now on this the 15 day of September, A. D. 1917, court is ordered to take recess subject to call, and the same is hereby done."

It again appears that the court was not in session from September 15, 1917, until October 22, 1917, when the following order convening court was made:

"Now on this the 22 day of October, A. D. 1917, the same being a regular judicial day of the August term of said court, court hereby convenes pursuant to adjournment:

"Present: Hon. Geo. C. Crump, judge; M. C. Jones, court clerk; T. S. Hurst, county attorney; Berry Jones, sheriff; A. F. Hall, court reporter;

"Public proclamation of the opening of court having been announced, the following, . among other proceedings, were had, to wit:"

On the 22nd day'of October, 1917, the following adjourning order was made:

"Now on this the 22 day of October, A. D. 1917, court hereby takes recess, subject to call." ·

This order was made convening court on the 23rd of October:

"Now on this the 23 day of October, A. D. 1917, court is hereby convened, pursuant to adjournment;

"Present: Hon. Geo. C. Crump, judge; M. C. Jones, court clerk; T. S. Hurst, county attorney; Berry Jones, sheriff; A. F. Hall, court reporter;

"Public proclamation of the opening of court having been announced, the following, among other proceedings, were had, to wit:"

It was on the 23rd of October, this case was tried and judgment rendered. The plaintiff in error contends that when the district court was adjourned on the 6th day of August, 1917, subject to call, and did not convene again until September 10, 1917, said term lapsed and the court was not legally in session subsequent to that time. We find that another order was made on the 15th day of September, when the court took a recess, subject to call, and was not again convened until October 22, 1917.

We do not agree with this contention. In re Nichols' Will (Phebus et al. v. Vinson et al.), 64 Okla. 241, 166 Pac. 1087. We quote paragraph 5 of the syllabus:

"June 10, 1915, after a hearing upon motions to remand cause to the superior court, motions were denied, whereupon hearing on pending motions to suppress depositions was continued until July 19th following, and order made setting the case for trial on the same day. On July 7th, 8th and 9th, further preliminary motions in the cause were heard before another judge, and on the latter day the court ordered the stenographer to make a transcript of the record and file the same with the clerk on July 19th, whereupon the records disclose court adjourned subject to call. On the day fixed for trial by the order of June 10th, and on which by order of July 9th, the stenographer was directed to file his transcript of the record, viz., July 19th, court was duly convened 'pursuant to adjournment,' and afterwards the cause went to trial and was proceeded with until July 30th, when the trial ended. The judges who presided at the hearings, both in the month of June and July, were assigned to hold court by the Chief Justice of this court pursuant to section 9, art. 7, Const., during the times occupied both in making up the issues and in the trial of the cause. At no time during the trial, or while the cause was in the lower court, was objection made that because of the form of the order of adjournment of July 9th the court was not legally convened on July 19th. Held, that neither the parties nor the court having treated the order as an adjournment sine die, and the parties having appeared and without objection proceeded to trial, and no question being made that the term was not, in the first instance, legally convened, an objection that the court was not legally in session during the trial, made for the first time in this court, should be denied."

The case of Union Pacific Railroad Co. v. Hand, 7 Kan. 380, contains a very learned discussion on the question of adjournments of court by Kingman, C. J.:

"A question is raised in limine of controlling importance. The facts necessary to understand it are these: The verdict in the case was returned, and judgment entered thereon, on Saturday, the fifth of December, and at the close of the day the court adjourned to Monday, the 7th; but neither on Monday, the 7th, nor on Tuesday, the 8th, was any court held, the district judge being absent. On the eighth of December the motion for a new trial was filed with the clerk. On the 9th, the judge having reached Lawrence, the court was opened, and the motion for a new trial was heard and overruled, and time given to make a case; and that case so made raises all the questions but one made in this court. It is insisted by defendant in error that all the proceedings had on Wednesday, the 9th, were coram non judice, and present no basis on which this court can act. The record shows that on Monday, the 7th, and on Tuesday, the 8th, the court was adjourned by the sheriff, the order reciting the absence of the judge, being detained by a severe storm. Section 719 of the Civil Code is referred to as sustaining the correctness of the action of the sheriff. This section seems clearly to refer to the beginning of a term, and therefore is not applicable to this case. It was inserted for the sole purpose of saving the term if the judge was detained from the place for any cause. Thomas v. Fogarity, 19 Cal. 644; People v. Sanchez, 24 Cal. 17. By the common law a failure to open the court on the first day of the term wrought a loss of the whole term. People v. Bradwell, 2 Cow. 445. The great inconvenience arising from this principle early led to its correction by legislation. Accordingly the English Parliament, in the 3 Geo. IV. 18, made provisions that the court might be opened at some day subsequent to the first day of the term, and that all records and proceedings should be made up as of the first day of the term (2 Bac. Abr. tit. 'Courts,' p. 714); and our examination has shown that similar laws have been passed in many of the states. This section of our Code having only reference to the beginning of the term, the act of the sheriff in adjourning the court was simply a nullity. Yet we do not think that the term was lost by the adjournment of the court on Saturday till Monday, and its not convening till Wednesday. The term of the court is fixed by law. Having once opened, it so continues till the term expires, or an adjournment sine die is made. The adjournment from day to day does not suspend its functions. After the court has adjourned for the day, it is a common practice for grand juries to continue their ses-

sions, swear witnesses, pursue their investigations, and find bills; and petit juries frequently remain out all night in deliberation, and make up their verdicts, while the journal shows that the court has adjourned. Each of these juries is part of the court, performing important functions; and the court is always in session in fact, so that 'it can protect the juries and enforce proper conduct on their part. 'For all general purposes the court is considered as in session from the commencement till the close of its term.' Barrett v. State, 1 Wis. 175.

"In the case just cited the court had adjourned till the next day, and some hours after the adjournment, and before the next day had begun, received a verdict in a criminal case, which was held good on grounds that necessarily cover the case under consideration. At common law the whole period of a term was looked upon as a single day, and everything done at the term was regarded as done of that day. We need not point out what innovations our statutes have made on this doctrine, but we nowhere find it entirely abrogated. The statute still makes judgment liens revert to the first day of the term at which the judgment is rendered. There is an evident purpose on the part of the courts to so construe the law, if possible, as will uphold the sessions of courts actually doing business. See Womack v. Womack, 17 Tex. 1; Cook v. Skelton, 20 Ill. 107; Jones v. State, 11 Ind. 357. In this case we find there present the judge, the clerk, and other ministerial officers, at a time and place where it is by law authorized to be held, properly organized at the beginning of the term, and performing the functions of a court. This must be held to be a court legally constituted, and fully authorized to transact business. 2 Bac. Abr. 6, 16 tit. 'Courts.' This conclusion makes it necessary to examine the various questions raised in the record."

This case had been followed in State v. Hargis, 84 Kan. 150, 113 Pac. 401, and other cases.

In considering the foregoing question we have not made any distinction between the words "adjournment" and "recess." We are not holding that these words are synonymous, but for the purpose of this case it is not necessary to draw any fine lines of distinction.

"Where the record of the board of supervisors showed that the board adjourned to a specified time, an amendment of the record showing that it took a recess until that time was unimportant; the words 'recess' and 'adjourn' both meaning that the meeting was postponed until the time specified." Beatle v. Roberts (Iowa) 137 N. W. 1006.

We hold that the court having regularly convened on the first day of the term as provided by law, and being regularly in session on that day, and no other term of court in the same district having intervened during the time the court was either adjourned or taking a recess, subject to call, the term of the district court of Okfuskee county did not lapse.

We will now consider the merits of the case. The record in this case discloses this state of facts: That Harry Douglas was the guardian of his two minor sons, Duard C. Douglas and Raymond R. Douglas; that he was appointed as such guardian by the county court of Okfuskee county in guardianship proceeding No. 85. Thereafter the guardianship proceedings were divided and Raymond R. Douglas' guardianship was conducted under case No. 631, and Duard C. Douglas' guardianship was conducted under case No. 609.

On January 10, 1911, in case No. 609, Duard C. Douglas, minor, a petition having been filed to sell real estate of said minor at a hearing had on the 12th day of January, 1911, the court made an order requiring the guardian, Harry Douglas, to give additional bond in the penal sum of $2,000 before the sale of said real estate. Thereafter certain of the real estate belonging to Duard C. Douglas was sold by the guardian under the order of said county court. The sale of same was duly confirmed on February 11, 1911.

On February 10, 1911, an additional bond was executed by W. H. Dill pursuant to an order of January 12, 1911. This bond, however, recited the name of Raymond R. Douglas and was in the penal sum of $1,000.

In the order confirming sale of real estate entered on the 11th day of March, 1911, in the Duard C. Douglas case No. 609, this statement appears in the order of the court: "The court further finds that said guardian has executed additional bond herein as required and the same has been approved."

In the Raymond R. Douglas case in the county court, being No. 631, an application having been filed to sell certain lands of the minor, Raymond R. Douglas, the court on the 11th day of February, 1911, entered its decree of sale of real estate by guardian and required additional bond to be given in the penal sum of $1,000.

Thereafter, and on the 23rd day of February, 1911, this bond was executed, and is the bond in controversy in this action:

"Additional Bond on sale of Real Estate? Adm'r, Exec'r, Guardian.

"State of Oklahoma, Okfuskee County.

"In County Court.

"In the Matter of the Estate of Raymond R. Douglas.

"Know All Men by These Presents: That we, Harry Douglas, as principal, and The

Southwestern Surety Insurance Co. as sureties, are held and firmly bound unto the Raymond R. Douglas & county judge of Okfuskee Co. state of Oklahoma, in the penal sum of two thousand dollars, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally by these presents.

"The condition of the above obligation is such, that whereas on the 11 day of Feb. 1911, an order was entered by the county court of Okfuskee county, state of Oklahoma, authorizing the above named principal as guardian of the estate of Raymond R. Douglas to sell certain real estate belonging to said estate, and providing therein that said _____ should give an additional bond in the above named sum, before making such sale.

"Now, therefore, if the said Harry Douglas as such guardian shall faithfully execute the duties of such trust according to law, then this obligation to be void, otherwise to remain in full force and effect.

"In Witness Whereof, we have hereunto subscribed our names this 23 day of Feb. 1911.

"Harry Douglas,

"The Southwestern Surety Insurance Company,

"By C. B. Conner, Atty. in Fact.
"(Corporate Seal)

"Subscribed and sworn to before me this ____ day of _____, 191.

"I hereby approve the above bond this 25 day of Feb. 1911.
"Seal. W. A. Huser, County Judge."
Endorsed on back:

"No. 631. In County Court. In the Matter of the Raymond R. Douglas. Additional Bond. Filed Feb. 23, 1911.

"M. E. Hicks, Clerk Co. Court.
"Recorded in Ad Bond Record Book 1, page 147."

Afterwards Harry Douglas was discharged as guardian of each of said minors and E. Huser was appointed his successor in each case. On April 7, 1916. E. Huser as guardian of Raymond R. Douglas instituted a suit in the district court of Okfuskee county, being case No. 2080, and sought to recover from defendant Southwestern Surety Insurance Company on said bond above set out. The defendant Southwestern Surety Insurance Company, answering, admitted the execution of the bond in the guardianship estate of Raymond R. Douglas and set up as its defense that no liability had accrued in favor of Raymond R. Douglas for which the surety company was liable under the bond. On the trial of the case the court found the

issues in favor of the defendant surety company and against the plaintiff. This judgment was rendered on the 20th day of July, 1916.

The defendant in error in this case, in order to charge plaintiff in error with liability, alleged in its petition that it was the intent of all the parties concerned, and so understood by each and all of them, that this bond should have been for the benefit of Duard C. Douglas instead of Raymond R. Douglas, and that both guardianship proceedings were pending under the same style and number in the county court and that it was a mere clerical error that the name of Raymond R. Douglas was inserted in the bond, whereas it was the intention of all the parties to insert the name of Duard C. Douglas. The action was to reform the bond and for judgment on it as reformed. Counsel for defendant in error then cite the following authorities in support of the judgment rendered by the trial court to sustain the theory that a mistake in the name of the obligee will not invalidate the bond:

Brandt, Suretyship & Guaranty (3rd Ed.) sec. 32, page 81; Rice v. Theimer, 45 Okla. 618, 146 Pac. 702; Thompson v. Grider Imp. Co., 36 Okla. 165, 128 Pac. 267; U. S. F. & G. Co. v. Hansen, 36 Okla. 459, 129 Pac. 60; S. W. Surety Ins. Co. v. Richard, 62 Okla. 122, 162 Pac. 468; McIntire v. Linehan, 178 Mass. 263; U. S. F. & G. Co. v. Commonwealth (Ky. App.) 104 S. W. 1029; State v. Wood, 51 Ark. 205, 10 S. W. 624; Riggs v Miller (Neb.) 52 N. W. 567; Turner v. Billagram, 2 Cal. 521; Morgan v. Thrift, 2 Cal. 562; People v. Samuel Love, 19 Cal. 677; Nicholay v. Kay, 6 Ark. 59; Lafferty, Adm., v. Lafferty, 10 Ark. 268; Dolton v. Cain, 14 Wall. 472; Carnegie, Phipps & Co. v. Hurlbert, 70 Fed. 209, 16 C. C. A. 498.

In most of these cases the bond ran in the name of the state, where it should have run to some municipality, or vice versa. However, the mere mistake in the name would not invalidate the bond; if it was a clerical error, the bond should be reformed to conform to the intention of the parties.

The Southwestern Surety Insurance Company, plaintiff in error here, set up in its answer in this action all of the proceeding had in said case No. 2080, in which Raymond R. Douglas was plaintiff and this plaintiff in error was defendant. This was not a plea in res judicata, but merely to show that the insurance company admitted and understood that it had executed and was liable under a bond to Raymond R. Douglas. There being only one bond issued by it, this was competent evidence to support its defense wherein

it denied that it executed a bond or even intended to execute a bond in favor of Duard C. Douglas. It accepted its liability to Raymond R. Douglas under this bond.

Harry Douglas testified that he was the father of Duard C. Douglas and the guardian who had defaulted. That C. B. Conner was his attorney while he was acting as such guardian and conducted the land sale on Duard C. Douglas' allotment. That C. B. Conner was also the attorney in fact for the plaintiff in error, Southwestern Surety Insurance Company, and executed the bond in controversy in this action as attorney in fact for said surety company. That at the time of the execution of this bond, witness "made a contract with the Southwestern Surety Insurance Company and the Citizens State Bank that this money was to be deposited to the Citizens State Bank subject to approval of the county judge or the Southwestern Surety Insurance Company."

W. H. Dill testified as follows:

"By Mr. Frerichs: Q. What is your name? A. W. H. Dill. Q. Mr. Dill, what business were you in in 1911, in this town? A. I was in the Citizens State Bank. Q. I hand you defendant's Exhibit 'A' and ask you if you ever seen that before? A. Yes, sir. Q. Whose handwriting is that in? A. Mine. Q. The handwriting of the body of the bond is in your handwriting? A. Yes, sir. Q. What is that? Tell the court about the circumstances of that bond, Mr. Dill? A. That is a bond made for Harry Douglas, guardian of Raymond R. Douglas, for one thousand dollars. Q. How did you happen to draw up that bond, Mr. Dill? A. Well, Harry Douglas, guardian, was going to sell some land of his ward, Raymond R. Douglas, and he gave me the data from the county judge's office and I prepared this bond and he signed it and I signed it and delivered to the clerk up here, Mr. Hicks. Q. Do you remember the day that the bond was executed that was signed by C. B. Conner, attorney in fact, that was signed by the Southwestern Surety Insurance Company? A. Do I remember the date of the bond? Q. Yes. Now, do you remember anything that happened? A. Yes, sir; I do. Q. State to the court what happened that day between Conner and you and Harry Douglas? A. There was a joint control agreement made at the time. By the Court: Q. In writing, or not? A. They are usually in writing, and this one, perhaps, was in writing. The attorney usually drew the contract and delivered it to the bank. Conner had an agreement of that kind. By Mr. O'Bannon: We object; the instrument itself would be the best evidence. By the Court: Sustained. Were these funds put in your bank at the time of this sale? A. I think they were. Q. Do you know whether it was under the supervision of the Southwestern Surety Company

or not? The checking out of it? A. I don't know; under my supervision, but in that agreement C. B. Conner, agent of the Southwestern Surety Insurance Company, supervised it. Q. Did he supervise it? Do you remember? A. I don't remember whether the checks were O. K'd. or not. By Mr. Wright: Q. You are the same W. H. Dill who was defendant in this case until a few minutes ago? A. Yes, sir; I was defendant."

We hold that under this evidence, and it not being disputed or contradicted, it is sufficient to sustain the findings of the court changing the name in the bond from Raymond R. Douglas to that of Duard C. Douglas. Under the bond as reformed there is a liability against the surety company in favor of Duard C. Douglas. There is no prejudicial error in the record, and the judgment should be, and the same is hereby, affirmed.

All the Justices concur, except KENNAMER, J., not participating, and MILLER, J., who dissents.

———

MILLER, J. (dissenting). The writer of the opinion of the majority court does not agree with the conclusions reached therein.

It is the policy of our judicial system to have certain times for convening the various courts. Usually the time for convening the term of court is fixed by statute. When so fixed every person may take notice thereof; this is necessary for the orderly dispatch of the public business in the courts. Attorneys and litigants have notice of it, as well as the public generally. The holding of a term of court is public business, and in which the public is interested. It is one of the important branches of our system of government. It is deemed so essential to give public notice of the time of convening a term of a court of record that where the specific date is not fixed, it is invariably provided that public proclamation be made thereof by advertisement in newspapers or posting of notices, so that the public as well as litigants and attorneys may be fully apprised.

Chapter 102, Session Laws of 1910, after providing for the terms of the district court in most of the districts, then made the following provision for adjourning district courts and for calling special terms:

"The regular term of any district court may be adjourned from time to time, or sine die, by a resident judge of the district court or by any other district judge assigned and holding court in such district, but such adjournment shall be (to) a time prior to the convening of the next regular term.

"The regular judge, or any judge assigned, may make all orders with reference to the adjournment of the term.

"Special terms of the district court in any county in a district may be called by the resident judge of said district, by order entered of record in such court, notice of such special term to be given in at least two consecutive issues of a weekly newspaper published and of general circulation in such county, prior to the convening of such special term."

The question presented by the contention of plaintiff in error depends upon the construction of the first paragraph above quoted. The succeeding paragraphs have been quoted for the purpose of throwing what light they may upon the first paragraph. In order to get at the specific meaning of this legislative act authorizing a court to adjourn during term time, we will quote the first paragraph leaving out the parts that may refer to other things, and it would read as follows:

"The regular term of any district court may be adjourned from time to time, * * * but such adjournment shall be to a time prior to the convening of the next regular term."

This makes it necessary to construe the meaning of the phrase "from time to time" as used in this section of the statute. Webster's International Dictionary defines the word "time" as follows:

"That in which events are distinguished with reference to before and after, beginning and end; relation with reference to concurrence or succession; the measurable aspect of duration; that within which change is determined."

As used here, the first word "time" indicates the beginning of the adjournment or suspension of the court. The second word "time" indicates the end of the duration of the adjournment or suspension of court. The Legislature in using the word "time" in the first instance knew that it meant a specific, definite, fixed period, hour or day, for its event or happening, to wit: the specific, definite hour or day the court adjourned or announced its adjournment, which might be either to another time, another day, or sine die. The Legislature realized and comprehended that this time would specifically and definitely be fixed by the act of the court in doing it (adjourning). The same word "time," being again employed, evidently was intended to mean another time which would be as definitely fixed but left to the discretion of the court, which by its order would adjourn to a day certain.

If the phrase "from time to time" is to be construed so that the court may make an order adjourning the court, subject to call, or take a recess subject to call, and then all of the officials constituting the court leave the courthouse or the courtroom with no intention or expectation of transacting any further court business for an indefinite number of days, weeks, or even months, until some day the district judge happens in there and decides he will hold court, then the last part of the paragraph above quoted is absolutely meaningless. It says, "but such adjournment shall be to a time prior to the convening of the next regular term." If the adjournment or recess is subject to call, without any immediate expectation of the court resuming the transaction of business, then it could not be determined until the court was reconvened whether or not it was adjourned to a time prior to the convening of the next regular term. This would be left entirely to the wish, convenience, or caprice of the judge. The Legislature evidently did not have any intention of leaving a matter of so great importance to the public at large locked up in the bosom of the trial judge. The term having been fixed by the Legislature to convene on the first Monday in August, 1917, and that Monday being the 6th day of August, 1917, the time was definitely fixed. Court having been regularly convened, it was within the power of the trial judge, under the statute above quoted, to have the court adjourned to September 10, 1917, or to any other specific date before the 5th day of November, 1917, which was the day fixed by statute for the convening of the November term, November 5th being the first Monday in November, 1917.

It is clear that the trial judge did not have any definite idea as to what day he would expect to reconvene the August term of the district court of Okfuskee county. Neither the judge, the attorneys, the officers of the court, the litigants, nor the public had knowledge of any definite time when the court would convene for the further transaction of business, neither was there any record made from which this information could be obtained.

It is said by defendant in error that the court did not intend to adjourn the term sine die; and this is true, for the order expressly so states. But the court cannot either intentionally or unintentionally set at naught the statutes which were enacted for the expressed purpose of governing the action of the court. If it can, then we have disposed of and forever in the future dispensed with the legislative branch of our government.

We wish it strictly understood that there are of necessity many adjournments and recesses during the progress of the trial of

cases, and especially in the trial of cases before a jury or when a grand jury may be in session, when it would be entirely proper to take a recess subject to call and not fix any definite time. It is not necessary every time the court may take a recess or suspend the active business of the court that it announce that it will take a recess to a certain hour or minute in the day. But when a court does adjourn or take a recess, subject to call, without any immediate intention of resuming the transaction of the public business of the court at any definite time in the immediate future, and does not reconvene for days or weeks, such adjournment or recess amounts to an adjournment of the court sine die.

"Adjournment of the regular term of a county court, without fixing in the order of adjournment any time at which the court shall reconvene, precludes the court from again convening until the time fixed by law for the next regular session of the court." Irwin v. Irwin, 2 Okla. 180; Black on Judgments, vol. 1, sec. 179; Earls v. Earls, 27 Kan. 538; Laughlin v. Peckham, 66 Iowa, 121; Kirtley v. Marshal S. M. Co., 4 Colo. 111; Filley v. Cody, 4 Colo. 109; Wight v. Wallbaum, 39 Ill. 554.

Defendant in error insists that this case is governed by the decision of Sharp, C. J., in Re Nichol's Will (Phebus et al. v. Vinson et al.) 64 Okla. 241, 166 Pac. 1087. In that case the court was in session on July 7, 8, and 9, 1915, and made orders in that case on each day. On July 9, 1915, the court granted leave to withdraw depositions for the purpose of attaching notice and certificate. It also ordered the stenographer to make a transcript of the record and file same with the clerk on July 19, 1915, and this case had been specifically set for trial on July 19, 1915. Then the court adjourned, subject to call. On July 19, 1915, the court convened with Judge Charles G. Watts presiding, and the cause came on for trial. The records in the office of the clerk of the Supreme Court showed that orders assigning Judge Watts to hold court in Pottawatomie county were made by Chief Justice Kane as follows: On July 3d, to hold court July 7th and 8th; on July 8th, to hold court July 9th; July 17th, to hold court for one week beginning July 19th; July 24th, a further order to hold court for one week beginning July 26th. The opinion then makes it clear that the court is not determining the effect of an order of adjournment, subject to call, as an abstract proposition, but viewed in the light of all the orders made in this case, and then states: "It is possible that cases may arise wherein a different rule should be applied, but such is not the case under consideration."

The case of the Railroad Co. v. Hand, 7 Kan. 380, quoted from in the majority opinion, is based on an entirely different statute from ours. One of the reasons advanced in that opinion is that the term is considered as one day; that judgments all relate back to the first day of the term. This rule does not obtain in this state under our statutes.

All proceedings had in a court at a time when the holding of such court is not authorized by law or when the term has expired or its jurisdiction is not exercised within the time prescribed by law—it is not a legally constituted court and such proceedings are void. 11 Cyc. 728.

"An assemblage of the proper officers at the proper place, but at a time not authorized by law, does not constitute a court; and any judicial proceedings then had, which under the law can be had only in term time, are null and void." In re James, 4 Okla. Cr. 94, 111 Pac. 947.

"A judgment of the probate court rendered in a civil action wherein the sum in controversy exceeds the jurisdiction of a justice of the peace, and which judgment was so rendered at the time when the court was not legally in session, is void for want of jurisdiction.

"Judgments rendered by a court not legally in session are void.

"Where terms of court are, under the law, fixed at stated periods, and the court fails to convene at the time so fixed, and by reason thereof the court is not legally in session, the parties to an action cannot, by agreement, confer jurisdiction upon the court to render a judgment binding upon the parties." American Fire Ins. Co. v. Pappe, 4 Okla. 110, 43 Pac. 1085.

Garlick v. Dunn, 42 Ala. 404; Brumley v. State, 20 Ark. 77; Cain v. Goda, 84 Ind. 209; McCool v. State, 7 Ind. 378; White v. Riggs, 27 Me. 114; Ex parte DeHay, 3 S. C. 564; Hodges v. Ward, 1 Tex. 244; Wilson v. State, 37 Tex. Cr. R. 373, 35 S. W. 390; Withers v. Fuller (Va.) 30 Gratt. 547; Johnson v. Hunter, 50 W. Va. 52, 40 S. E. 448.

If the trial was had and judgment rendered when the court was not legally in session, the act of the court was coram non judice and void. American Fire Ins. Co. v. Pappe, supra; In re McClaskey, 2 Okla. 568, 37 Pac. 854; In re McClaskey, 52 Kan. 34, 34 Pac. 459; In re Terrill, 52 Kan. 29, 34 Pac. 457; Earls v. Earls, 27 Kan. 538; In re Millington, 24 Kan. 214; In re Walter James, 4 Okla. Cr. 110, supra; Wightman v. Karsner, 20 Ala. 446; State v. Roberts, 8 Nev. 239.

Defendant in error says that both parties announced ready for trial. The record shows that no objection was made on the

ground that the court was not legally in session; but even had they tried the case by agreement, this would not give the court jurisdiction, for jurisdiction cannot be conferred by agreement. American Fire Ins. Co. v. Pappe, supra; Earls w. Earls, supra; Francis v. Wells, 4 Colo. 274.

The judgment should have been set aside, because it was void.